Harold MEIER, Appellant,

v.

Kerri A. CLOUD, Appellee.

No. S–9829.

Supreme Court of Alaska.

Nov. 16, 2001.

William T. Ford, Law Offices of William T. Ford, Anchorage, for Appellant.

Charles J. Gunther, Law Office of Charles J. Gunther, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

Upon dissolving their marriage, Harold Meier and Kerri Cloud agreed to share phys- ical custody of their son Tyler. When Kerri decided to move to Seattle two years later, she sought primary custody of Tyler. Although the superior court initially considered appointing an investigator to prepare a child custody report, it ultimately concluded that a report was unnecessary. After a hearing, the court found that Tyler's best interests would be served by awarding primary custody to Kerri because she planned to care for him at home on a full-time basis. We affirm, concluding that the superior court did not abuse its discretion in finding a custody investigation unnecessary and that it properly considered and applied all relevant custody factors in deciding Tyler's best interests.

## II. FACTS AND PROCEEDINGS

Harold and Kerri dissolved their marriage in March 1998 and agreed to share legal and physical custody of their son Tyler, who was then four years old. Both parties lived in the Anchorage area.

Two years later, in April 2000, Kerri filed a motion to modify this custody arrangement. By then, Harold and Kerri had both remarried. Kerri was expecting another child, and her husband had accepted a job transfer to Seattle. In moving to modify the existing custody order, Kerri sought primary physical custody so that Tyler could live with Kerri and her husband in Seattle, with Harold enjoying reasonable visitation rights.

Harold opposed Kerri's motion, arguing that it would be contrary to the best interest of Tyler to disrupt the present custodial situation. In his opposition, he requested that the court appoint an investigator and order a child custody report. Harold's counsel estimated that a report would cost between $3,000 and $4,000, certified that the parties could afford to pay that amount, and suggested that they split the report's cost. He named four potential investigators and promised to confer with Kerri's counsel to determine if the parties were "amenable to agreeing to the appointment of an investigator."

Kerri responded that a limited child custody report might be helpful, but she complained that a full report by Harold's proposed investigators would be too costly and .

time consuming. Kerri suggested the name of an investigator who she thought would be capable of producing a prompt and inexpensive report. She also sought an expedited custody determination, so that she could move to Seattle with Tyler as soon as his school year ended in June.

Harold opposed Kerri's motion for an expedited custody ruling and objected to her proposed investigator, citing "recent problems with her investigations." He accused Kerri's attorney of causing unnecessary delay by "refus[ing] to name a mutually agreeable custody investigator" from the list of candidates that Harold's attorney had submitted.

Based on these pleadings, Superior Court Judge Rene Gonzalez issued an order on May 23, 2000, giving the parties five days to stipulate to a mutually acceptable investigator. The parties failed to meet the five-day deadline, offering no explanation for their noncompliance. Harold later submitted a second list, naming six potential custody investigators—the four that he had originally designated and two new ones. Kerri countered with two names—her original proposal and another candidate. In reply, Harold objected to Kerri's candidates and asked the court to make the appointment itself, urging it to act before deciding whether Tyler could accompany Kerri for an extended summer visit to Seattle.

Harold's reply was filed on June 15. Four days later, Judge Gonzalez issued an order scheduling a custody hearing for early August and concluding that the issue could be resolved without a custody investigation:

> Upon review of the issues that actually [exist] between the parties regarding the custody of their minor child, this court finds and concludes that a child custody investigation is not necessary in this case; therefore, a child custody investigator will not be appointed. The parties have been sharing physical custody of their minor child since March 12, 1998, and the shared custody arrangement has served the welfare and best interest of the minor child. There is no issue that each parent is a fit and proper parent to have ... custody and provide for the needs of the child.

> The substantial change in circumstance that exists that warrants a review of the present shared custody arrangement is the move from Anchorage to Seattle by the mother with her current husband.

> Under the facts and circumstances of this case, the court finds that it is not necessary for the parties to incur the costs of a private custody investigator as the court has concluded that the information that would be provided would not necessarily be helpful.

> IT IS HEREBY ORDERED that an evidentiary hearing is calendered for August 8, 2000 ... before the undersigned judge.... Each party will be afforded the opportunity to present any relevant evidence including expert testimony they deem appropriate.

Neither party sought reconsideration of this order, raised any issue concerning prehearing discovery, or asked to postpone the August 8 hearing. The hearing proceeded as scheduled. Harold, Kerri, and their spouses testified. During the hearing, neither party voiced concern over the unavailability of additional witnesses or complained of insufficient time to prepare.

Upon concluding the hearing Judge Gonzalez awarded primary custody to Kerri. The judge found that both Kerri and Harold were good parents; that both were capable of providing for Tyler's physical, mental, and social needs; that Tyler loved both parents; and that he was bonded to them equally. Finding other factors equal as well, the judge decided that the determining factor should be Kerri's ability to stay at home to personally care for Tyler full time: "[T]he welfare and best interests of the minor child are served by being provided with the opportunity to have a parent provide for his care during the day on a full time basis."

Harold appeals.

## III. DISCUSSION

■ Harold first contends that the superior court erred in declining to appoint a child custody investigator. Noting that he and Kerri both requested an investigation, Harold faults the superior court for initially

delaying the appointment and then deciding to forgo an investigation. He contends that the court's abrupt decision to proceed without a custody report, its unexpected order scheduling a hearing on short notice, and the brevity of the August 8 hearing prevented the parties from producing expert testimony, thereby resulting in a flawed custody decision.

In response, Kerri defends the superior court's decision, emphasizing that a custody investigation would have delayed the hearing and that Harold has failed to specify how a custody report would have assisted the court.

 Kerri's response is persuasive. As Harold and Kerri both recognize, a child custody investigation is not required in every custody case: because a custody report serves to assist the trial court in its decision, the desirability of a report is an issue for the trial court to decide as a matter of discretion on a case-by-case basis.[1] We will find an abuse of discretion only if the superior court's decision is clearly unreasonable under the totality of the circumstances.[2] To establish an abuse of discretion, then, Harold was required to show that the superior court's decision was "arbitrary, capricious, manifestly unreasonable, or . . . [stemmed] from an improper motive."[3]

He has not made the requisite showing. When Kerri filed her motion to modify custody in early April 2000, Tyler was finishing kindergarten in Eagle River and would begin first grade after the summer vacation. Kerri filed her motion because her family was moving to Seattle. Obviously, time was of the essence: the issue of Tyler's school-year custody needed to be resolved before summer ended.

Although the superior court initially favored a custody investigation and directed the parties to designate an investigator, Harold and Kerri ended up disputing the scope of the investigation and the choice of the

investigator. Almost two months passed while they argued over details of the appointment, each stressing the importance of proceeding expeditiously, and each blaming the other for the delay. By mid-June summer had arrived, the parties had reached an impasse, and they asked the court to take the initiative. The court was already aware that a custody investigation would be costly and time consuming; given that the parties now appeared unable to agree on the investigation's terms, the court could reasonably conclude that it would likely prove divisive, as well. And the court knew that less than three months remained to reach a final decision. The court also knew that both parties had established themselves to be competent parents during the time they shared custody of Tyler. And neither had identified any concrete need for a formal custody report.

Considering the totality of these circumstances, the superior court concluded that the need for a timely decision outweighed any marginal benefit to be gained by awaiting a formal custody investigation. This decision was not an abuse of discretion.

 Harold nevertheless contends that the superior court's June 19 order left him inadequate time to prepare for the August 8 custody hearing. But this contention is meritless.

 The superior court's order gave the parties a full six weeks to prepare their cases. Moreover, Kerri's custody motion had been pending more than two months when the June 19 order issued. The motion raised issues that needed to be resolved before summer ended; Harold knew of this need and had pressed the court to act swiftly. Once the court set the August 8 hearing, Harold failed to object to the date, never asked for additional time to prepare, and said nothing during the hearing to suggest that his case had been hampered by inadequate discovery or witness problems.[4]

1. See *Pearson v. Pearson*, 5 P.3d 239, 242 (Alaska 2000).

2. See *Tobeluk v. Lind*, 589 P.2d 873, 878 (Alaska 1979).

3. *Id.*

4. Harold belatedly raised these issues for the first time in his motion to reconsider the superior court's decision awarding primary custody to Kerri. On appeal, Harold complains that he was unable to raise many of these issues because they are based on information that Tyler first divulged after the superior court issued its custody order.

Even now, on appeal, Harold merely advances a conclusory statement that a new hearing would enable him to present expert testimony. He fails to specify how an additional opportunity to present expert testimony would materially assist the trial court's decision. Reviewing the record, we find nothing to support a conclusion that the superior court abused its discretion, either by declining to appoint a custody investigator or by scheduling the custody hearing for August 8.

■ Harold's last challenge disputes the superior court's custody decision on its merits. Alaska Statute 25.24.150(a) empowers the superior court to modify a child custody order in a divorce or dissolution proceeding if changed circumstances demonstrate that modification "may seem necessary or proper ... in the best interests of the child." [5] Alaska Statute 25.24.150 spells out the factors that the court must consider in determining the child's best interests when changed circumstances suggest a need for modification.[6]

Harold does not dispute that Kerri's move to Seattle qualified as a change in circumstances warranting modification of the earlier custody order; he contends instead that the

superior court misapplied relevant statutory factors in determining Tyler's best interests. Specifically, Harold claims that the court overrated the importance of Kerri's ability to give Tyler full-time care in her home. According to Harold, his own work schedule, Tyler's school schedule, and Tyler's strong relationship with Harold's new wife, Christine, all demonstrate that Tyler's best interests would be served by staying in Eagle River with Harold. Harold downplays the benefit of Kerri's availability to provide full-time care, asserting that her decision to stay at home is motivated by the impending birth of her second child, not by her desire to spend time with Tyler.

Harold also contends that the superior court underrated the importance of Tyler's ties to Eagle River, a key consideration in evaluating his need for continuity and stability.[7] Criticizing the superior court's prediction that Tyler would enjoy a more stable emotional environment in Kerri's home, Harold insists that the statutory factor of stability and continuity required the court to focus on his existing situation: "The question is not whether both parents *can* provide Tyler with a stable environment, but ... how long Tyler *has been in* a stable environment."

---

But Harold had an opportunity to argue this point before the superior court when he moved for reconsideration of that court's custody decision. Since Harold did not raise this argument then and does not now challenge the superior court's denial of reconsideration, his arguments are not properly preserved for appeal.

5. AS 25.24.150(a) provides:

In an action for divorce or for legal separation or for placement of a child when one or both parents have died, the court may, if it has jurisdiction under AS 25.30.300–25.30.320, and is an appropriate forum under AS 25.30.350 and 25.30.360, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of a child of the marriage, make, modify, or vacate an order for the custody of or visitation with the minor child that may seem necessary or proper, including an order that provides for visitation by a grandparent or other person if that is in the best interests of the child.

6. AS 25.24.150(c) provides in critical part:

In determining the best interests of the child the court shall consider

(1) the physical, emotional, mental, religious, and social needs of the child;

(2) the capability and desire of each parent to meet these needs;

(3) the child's preference if the child is of sufficient age and capacity to form a preference;

(4) the love and affection existing between the child and each parent;

(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(6) the desire and ability of each parent to allow an open and loving frequent relationship between the child and the other parent;

(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;

(9) other factors that the court considers pertinent.

7. AS 25.24.150(c)(5) requires that a court making a custody award consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity."

■ We disagree. Among other statutory custody factors listed in AS 25.24.150(c), paragraph (5) requires that, in making a custody decision, a court must consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." The statute's plain language requires the court to view continuity and stability both prospectively and retrospectively: the court must examine both the time that a child "has lived" in a stable environment and "the desirability of maintaining [that] continuity."

■ Furthermore, when parents live in the same community and share equal physical custody of a child, a parent's decision to relocate to another state will ordinarily necessitate a change in the status quo, requiring one parent or the other to assume primary physical custody. Because the child will no longer be able to spend equal time with each parent in these situations, a court considering the child's need for continuity and stability in this context must examine not only the desirability of maintaining geographical continuity, but also the importance of maximizing relational stability.[8] A continuity test centered entirely on the child's geographical stability would always favor placing the child with the non-moving parent. Yet our decisions recognize that courts may properly award primary custody to the relocating parent when that parent offers superior emotional stability.[9] Thus, the continuity and stability factor does not preordain the result in such cases; instead, it commands a comprehensive inquiry into "each parent's respective ability to maintain stable and satisfactory relations between themselves and the child."[10]

Here, the superior court gave balanced consideration to continuity and stability, as well as to all of the other statutory custody factors. Looking back on the historical evidence relating to Tyler's shared custody situation, the court expressly recognized that both Harold and Kerri could "provide Tyler with a stable and safe environment." The court found that both Harold and Kerri were good parents who could "provide for Tyler's physical, mental, and social needs." It also found that Tyler loved both Harold and Kerri and was bonded to them equally. The court found, as well, that Harold and Kerri were equally capable of and willing to provide Tyler with an open and loving relationship with the other parent. In addition, the court found that there had been no neglect, domestic violence, or substance abuse affecting Tyler. And in the court's view, Tyler was too young to express a meaningful preference.

Given the close balance of these statutory factors, the superior court elected to award primary physical custody of Tyler to Kerri because she would be available to personally care for Tyler on a full-time basis; Tyler's best interests would be met, the court concluded, by being in the primary custody of a full-time parent.

■ Our review of the record convinces us that the superior court's factual findings are comprehensive, well supported by the record, and not clearly erroneous.[11] Because the court appropriately considered and balanced all relevant statutory factors, including continuity and stability, we conclude that it did not abuse its discretion in awarding Kerri primary physical custody of Tyler.

8. *See West v. Lawson,* 951 P.2d 1200, 1203–04 (Alaska 1998).

9. *See, e.g., McQuade v. McQuade,* 901 P.2d 421, 424–26 (Alaska 1995) (rejecting a father's claim that continuity had been undervalued and affirming the trial court's decision to grant primary physical custody to a mother moving to Texas so that the child could continue to live with half-siblings); *House v. House,* 779 P.2d 1204, 1208 (Alaska 1989) (affirming a determination that it would be in child's best interest to move with father to California where handicapped children's services would be superior to those available in Homer).

10. *McQuade,* 901 P.2d at 426.

11. We review child custody modifications for an abuse of discretion and reverse them only if controlling factual findings are clearly erroneous or if the superior court failed to consider statutorily mandated factors, assigned disproportionate weight to some factors, or relied on improper factors. *See Kessler v. Kessler,* 827 P.2d 1119, 1119 (Alaska 1992) (per curiam); *Horutz v. Horutz,* 560 P.2d 397, 399 (Alaska 1977).

## IV. CONCLUSION

We therefore AFFIRM the superior court's decision.