Renae BLANTON, Appellant,

v.

Michael YOURKOWSKI, Appellee.

No. S-12565.

Supreme Court of Alaska.

April 11, 2008.

Renae Blanton, Anchorage, pro se.

Michael Gershel, Anchorage, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, and
CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Following a custody trial, the superior court awarded custody of the parties' three-year-old daughter to her father. Because the court's finding that the father was more likely than the mother to offer a loving relationship between the child and the other parent was not clearly erroneous, and because the court did not abuse its discretion in considering each parent's capability to care for the child and in assessing the stability offered by each parent, we affirm the superior court's custody decision.

## II. FACTS AND PROCEEDINGS

### A. Facts

Michael Yourkowski and Renae Blanton began living together in Homer in April 2002. Their daughter Ella was born on June 22, 2003. The couple married in September 2003 but separated two years later. Upon separation, the parties were unable to reach a formal agreement on a custody schedule for Ella. At first, Ella spent two nights of each week with Michael and five nights of each week with Renae. Michael spent a substantial amount of time with Ella during the day while Renae was working. After a short period, Renae agreed that Michael could have one more night of custody every other week; accordingly, Michael had three overnights one week and two the next week. For most of the time after separation, the parties had approximately equal time with Ella during the child's waking hours.

### B. Proceedings

In October 2005, unhappy with the custody arrangement, Michael filed a complaint for divorce and joint custody of Ella. Renae responded by seeking sole legal and primary physical custody of the child.

Renae obtained permission from the trial court in April 2006 to relocate to Anchorage in order to pursue her nurse practitioner career. In June 2006 the superior court entered an interim custody order providing for shared custody while Renae was in Anchorage. Specifically, the court ordered that "[d]uring alternate weeks, the child shall be with plaintiff Michael Yourkowski from Sunday at 10:00 a.m. to Friday at 10:00 a.m." and "[d]uring the remaining period of each two-week cycle, the child shall be with defendant Renae Blanton." The order also provided that "[d]uring the time that the child is with Renae ..., Michael ... shall be entitled to reasonable, non-overnight visitation with the child whenever he travels to Anchorage. This shall include the right to care for the child while Renae ... is at work." Thereafter, Michael made numerous trips to Anchorage for extra visitation. The "reasonable visitation" provision in the order caused disagreement between Renae and Michael. Michael alleges that Renae interfered with his efforts to spend time with Ella every time he came to Anchorage. Renae responds that "Michael abused his privilege of visitation by making it a point of being in Anchorage every week that Ella was with Renae" in order to "bully Renae into agreeing to a week on week off schedule." Upon motion from Michael, the trial court held Renae in contempt of court because she "violated the interim order by willfully, without justification, denying Yourkowski visitation while she was working."

The matter came to trial over three days in August–September 2006 before Superior Court Judge Donald H. Hopwood. Judge Hopwood concluded that the "distinguishing considerations" for the parents "are the ability and willingness of each of them to foster a good relationship between Ella and the other parent, the ability of the parents to meet Ella's needs, and the need for continuity."

As to the first distinguishing factor—the ability and willingness to foster a good relationship between the child and the other parent—Judge Hopwood found:

> The parents differ in their willingness and ability to facilitate and encourage ... a close and continuing relationship between the child and the other parent. Mr. Yourkowski is willing to do that, and has dem-

onstrated it.... On the other hand, as described above, Ms. Blanton is consistently unwilling to foster a good relationship between the father and the child, and does so by attempting to limit his time with the child and frustrating his efforts to see the child.... [H]er ability to facilitate a good relationship between Mr. Yourkowski and Ella is impaired. It is much less than that of the father, and is likely to continue for a long period of time.

As to the second distinguishing factor—the ability to meet Ella's needs—the court found that Michael would be able to take care of Ella most of the time, "rather than relying on babysitters," while Renae would have to utilize childcare more often.

As to the third factor—the need for continuity—the court pointed to Michael's long residence in Homer and the social network and supportive friends that surrounded him and Ella there.

Based on these findings, the superior court granted primary physical custody and sole legal custody to Michael. Renae appeals.

## III. STANDARD OF REVIEW

■ The superior court has broad discretion in determining child custody, and its determination will not be set aside unless the record shows that its controlling findings of fact are clearly erroneous or that the court abused its discretion.[1] A finding of fact is clearly erroneous when a review of the record leaves us with a definite and firm conviction that a mistake has been made.[2] An abuse of discretion has occurred if the superior court considered improper factors in determining custody, failed to consider statutorily mandated factors, or assigned disproportionate weight to certain factors while ignoring others.[3]

## IV. DISCUSSION

On appeal Renae makes three arguments: (1) the trial court's finding that Renae would

be less likely to foster a loving relationship between Ella and Michael was clearly erroneous; (2) the trial court abused its discretion by considering improper factors regarding each parent's capability to care for Ella; and (3) the trial court abused its discretion in its assessment of the continuity of care factor.

### A. The Superior Court's Finding that Renae Was Unable To Cooperate and Foster a Loving Relationship Between Ella and Michael Was Not Clearly Erroneous.

■ The superior court must determine custody in accordance with the best interests of the child by considering the factors set out in AS 25.24.150(c). These factors include "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child."[4] In *Silvan v. Alcina*[5] we explained the increased significance of this factor when the parents live in different cities: "It is essential to have a custodial parent willing to foster an open relationship with the other parent when a great distance separates the children from the non-custodial parent, and it is reasonable for the superior court to place enhanced importance on this factor when making its decision."[6]

The superior court concluded that Renae "is consistently unwilling to foster a good relationship between the father and the child, and does so by attempting to limit his time with the child and frustrating his efforts to see the child." Part of the basis for this conclusion was the court's finding that "Ms. Blanton has exhibited resistance to Mr. Yourkowski's visitation with the child, particularly when he attempted to visit with Ella after Ms. Blanton moved to Anchorage." Renae challenges this finding as clearly erroneous.

---

1. *Borchgrevink v. Borchgrevink*, 941 P.2d 132, 134 (Alaska 1997).

2. *Id.*

3. *Id.*

4. AS 25.24.150(c)(6).

5. 105 P.3d 117 (Alaska 2005).

6. *Id.* at 121.

The superior court found that Renae resisted Michael's attempts to have visitation with Ella in Anchorage. The conflict as to visitation in Anchorage resulted from the parties' different interpretations of part of the interim custody order. The interim order provided that "[d]uring the time that the child is with Renae Blanton, Michael Yourkowski shall be entitled to reasonable, non-overnight visitation with the child whenever he travels to Anchorage. This shall include the right to care for the child while Renae Blanton is at work." Renae argues that a reasonable interpretation of the order would provide that, "should Michael happen to be in Anchorage for some other reason, he should be allowed to visit with Ella." Renae alleges that Michael inappropriately took advantage of ambiguity in the court's interim order to travel to Anchorage every week solely for the purposes of visitation.

Michael admits that he visited Anchorage every week in order to spend time with Ella while Renae was at work. However, Michael is correct that his visits were permissible under the language of the order. The order unambiguously stated that Michael could have daytime visitation "whenever" he traveled to Anchorage, including "while Renae Blanton is at work." Michael's visits, although frequent (and possibly disruptive of Ella's daily routine), were within the language of the order. Importantly, the visits are also indicative of a desire to be present in Ella's life.

Renae decided, upon the advice of her attorney, to not facilitate Michael's attempts to be with Ella even though Michael provided advance notice every time he came to Anchorage. Renae failed to meet Michael at Home Depot, the planned transfer location, numerous times when he requested daytime visitation. Renae also refused to allow Michael to take Ella from daycare even though Michael sought daytime visitation. Although it is possible that Renae's lack of cooperation was "situational" as she alleges, she presents no evidence that she ever actually did cooperate when Michael sought visitation in Anchorage. To the contrary, Renae acted as an impediment to Michael's attempts to spend time with Ella and thereby refused to foster a good relationship between Michael and Ella. Renae's argument fails to leave us with a definite and firm conviction that the superior court made a mistake when it found that Renae exhibited resistance to Michael's visitation. Thus, the court's finding was not clearly erroneous.

### B. The Superior Court Properly Considered Each Parent's Relative Capability To Care for the Child.

■ The superior court may also consider, in determining custody in the best interests of the child, "the physical, emotional, mental, religious, and social needs of the child" as well as "the capability and desire of each parent to meet these needs."[7]

Renae argues that the superior court erred by considering each party's work schedule in making its custody determination. For the proposition that parental work schedules may not be considered, she relies on several cases from outside Alaska and on our opinion in *West v. West.*[8] In *West*, we considered a superior court custody determination that was based on a finding that a two-parent household was better for the child than a single working-parent household.[9] We held that "custody awards may not be based on the assumption that a divorced parent who remarries can provide a better home than an otherwise equally competent parent who remains single."[10] Importantly, we did not hold that a parent's work schedule could never be considered. Rather, we merely concluded that a custody decision cannot be based on the assumption that a two-parent household is invariably better than a single-parent household.[11] Indeed the effect of a parent's work schedule on the parent's capa-

---

7. AS 25.24.150(c)(1) and (2).

8. 21 P.3d 838 (Alaska 2001).

9. *Id.*

10. *Id.* at 839.

11. *Id.*

bility to care for a child is regularly considered in custody cases.[12] Thus, in *Meier v. Cloud*,[13] we affirmed the superior court's custody award to a parent based on a finding that the parent "would be available to personally care for [the child] on a full-time basis."[14] The necessary inquiry requires an examination of "case-specific evidence" of each parent's capability to care for the child.[15]

Here, the superior court considered case-specific evidence revealing that Michael was more able to meet Ella's daily needs. The court concluded that custody with Michael was in Ella's best interest because Michael had more time to be with Ella as well as an "excellent social network and supportive friends" who "take great interest in the child . . . and will assist . . . whenever necessary." In discussing the relative capability of the parents to meet Ella's needs, the superior court emphasized that Renae "has less time available to spend with Ella," than Michael. The court then added that Renae's potential move to Texas could mean "disruption, new social contacts, new employment, more time and energy necessary for a job and new living circumstances, and less time and energy for the child."

This discussion does not improperly focus on Renae's status as a working parent. Rather, it provides case-specific evidence of why it may be in Ella's best interest to be with Michael. Because the superior court considered the specific context of each parent's capability to care for Ella, the court did not abuse its discretion.

## C. The Superior Court Properly Applied the Continuity Factor by Addressing Both Geographic Continuity and Emotional Continuity.

Alaska Statute 25.24.150(c)(5) requires the court in a child custody case to consider "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." The continuity factor has two components: maintaining geographic continuity and maximizing relational stability.[16] We have held that this factor does not automatically give a custodial preference to the primary care giver.[17]

### 1. The superior court did not err by failing to find a preference for the primary care giver.

 Renae argues that the superior court abused its discretion by failing to find that she was Ella's primary care giver and by failing to consider that factor in its decision. However, we have concluded in various cases that there is no custodial preference for the primary care giver in Alaska.[18] Nonetheless, the primary care giver inquiry may be relevant to the extent that it affects the determination of the child's "stable, satisfactory environment and the desirability of maintaining continuity."[19]

The superior court made no explicit finding that Renae was the "primary care giver," although it did recognize that she had been the "primary custodian" during the post-separation period. The court found that "[f]or most of the time since their separation, the parties have had approximately equal time with Ella during the child's waking hours. . . . Ms. Blanton has had more over-

12. *See, e.g., Jenkins v. Handel*, 10 P.3d 586, 591–92 (Alaska 2000) (discussing effect of mother's work schedule on her availability to care for her children in custody modification case).

13. 34 P.3d 1274 (Alaska 2001).

14. *Id.* at 1279.

15. *West*, 21 P.3d at 843.

16. *Meier*, 34 P.3d at 1279.

17. *Elliott v. Settje*, 27 P.3d 317, 320 (Alaska 2001) (citing *Evans v. Evans*, 869 P.2d 478, 483

n. 4 (Alaska 1994); *I.J.D. v. D.R.D.*, 961 P.2d 425, 430 (Alaska 1998); *McDanold v. McDanold*, 718 P.2d 467, 470 n. 4 (Alaska 1986)). *But see Veselsky v. Veselsky*, 113 P.3d 629, 635 (Alaska 2005) (reasoning that under the stability factor, courts should consider social and emotional factors such as who the primary care giver is).

18. *See, e.g., Elliott*, 27 P.3d at 320 (reasoning that the continuity factor "does not automatically give a custodial preference to the primary care giver").

19. *See* AS 25.24.150(c)(5); *Veselsky*, 113 P.3d at 635.

nights with the child, but the parties have had nearly equal waking time." While it is true that Ella lived with Renae after the parties separated, Michael was still a constant presence in Ella's life due to his frequent visits to Anchorage. Thus, even if Alaska had a primary care giver presumption for custody determinations, it is not certain that Renae would be considered the primary care giver. For these reasons, the superior court did not abuse its discretion by not granting a preference to Renae as primary care giver.

### 2. The superior court adequately addressed the factor of emotional stability.

■ The continuity factor includes both emotional stability and geographic stability.[20] Renae argues that the superior court abused its discretion by providing undue focus on the geographic stability of each parent, and thereby improperly gave a preference to the non-moving parent.

In various cases we have emphasized the importance of emotional stability in addition to geographic stability. In *Meier* we described the appropriate continuity analysis when a moving parent seeks custody:

> Because the child will no longer be able to spend equal time with each parent in these situations, a court considering the child's need for continuity and stability in this context must examine not only the desirability of maintaining geographical continuity, but also the importance of maximizing relational stability. A continuity test centered entirely on the child's geographical stability would always favor placing the child with the non-moving parent. Yet our decisions recognize that courts may properly award primary custody to the re-

locating parent when that parent offers superior emotional stability. Thus, the continuity and stability factor does not preordain the result in such cases; instead, it commands a comprehensive inquiry into "each parent's respective ability to maintain stable and satisfactory relations between themselves and the child." [21]

In *McQuade v. McQuade*[22] we concluded that the superior court did not abuse its discretion by awarding custody to the parent who planned to move because "the record shows that the superior court considered the factors of stability and continuity and, in light of the particular facts of this case, chose to emphasize emotional continuity over geographic continuity." [23] Finally, in *Moeller–Prokosch v. Prokosch*[24] we reasoned that the trial court must engage in a "symmetric consideration of the consequences to [the child] both if [the mother] leaves with him and if she leaves without him." [25]

In other cases we have affirmed superior court decisions that concluded it was in a child's best interest to remain with the non-moving parent. For example, in *Rooney v. Rooney*[26] we held that the superior court did not abuse its discretion by granting custody to the non-moving parent because such a determination was appropriate based on continuity.[27] One important factor we considered in upholding the superior court's decision in *Rooney* to grant custody to the non-moving parent was the quality of the child's support network where he lived.[28] Also, in *Barrett v. Alguire*[29] we upheld a custody modification that granted custody to a non-moving parent in order to maintain "stability of the children's environment." [30]

In the present case the superior court considered both geographic stability and emotional stability and engaged in a symme-

20. *Meier,* 34 P.3d at 1279.

21. *Id.* at 1279 (quoting *McQuade v. McQuade,* 901 P.2d 421, 426 (Alaska 1995)).

22. 901 P.2d 421.

23. *Id.* at 426.

24. 99 P.3d 531 (Alaska 2004).

25. *Id.* at 536.

26. 914 P.2d 212 (Alaska 1996).

27. *Id.* at 217.

28. *Id.* (explaining "at least two important people in [the child]'s past support network will remain with him in Wrangell").

29. 35 P.3d 1 (Alaska 2001).

30. *Id.* at 9.

tric consideration of the consequences to Ella under each placement alternative. Under the geographic stability prong, the court found that placing Ella with Michael would be appropriate because of Michael's continuous presence in the supportive environment of Homer, compared with Renae's move to Anchorage and potential move to Texas. The superior court did not provide an automatic preference to Michael as the non-moving parent. Rather, the court explicitly recognized that "[m]oves of residence do not, alone, mean that the parent is less capable of caring for the child," and addressed important additional facts under the emotional stability prong. The court reasoned that Michael had more time to be present in Ella's life, that Renae was less capable of providing continuous care because she had "less time and energy" for the child, and that Michael had a supportive social network in Homer who would assist him in raising Ella. These facts indicate that being with Michael may provide Ella with not only geographic continuity, but also superior emotional stability because Michael's living arrangements are settled, and he is part of a community that will be supportive of Ella. Because the superior court adequately addressed both elements of the continuity test and came to a reasonable result in light of the facts, it did not abuse its discretion.[31]

## V. CONCLUSION

Because (1) the superior court's finding that Michael was more willing to foster a loving relationship between Ella and her mother was not clearly erroneous, (2) the court did not abuse its discretion in assessing each parent's capability to meet the child's needs, and (3) the court did not abuse its discretion in assessing the continuity factor, we AFFIRM the superior court's custody decision.

BRYNER, Justice, not participating.

---

31. Although awarding custody to Renae based on her strong emotional bond with Ella may have also been a reasonable result, we cannot substitute our judgment for that of the superior court.

*McDanold v. McDanold,* 718 P.2d 467, 470–71 (Alaska 1986) (explaining "[i]n a case as close as this one, the trial court must be given some latitude in making a decision").