*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANDREA C., | ) | |
| | ) | Supreme Court No. S-14996 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-04-08093 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MARCUS K., | ) | |
| | ) | No. 7027 – August 7, 2015 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Andrea C., pro se, Wolfeboro, New Hampshire, Appellant. Marcus K., pro se, Anchorage, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.      INTRODUCTION

Andrea C.[1] appeals the superior court's decision to award Marcus K. primary physical and sole legal custody of their two children. Andrea argues the superior court made inadequate findings regarding Marcus's history of domestic

---

[1]      We have abbreviated the parties' names and use pseudonyms for their children to protect the children's privacy.

violence, and she also challenges the superior court's application of the best interest factors. We affirm the superior court's custody decision for the reasons discussed below.

## II.    FACTS AND PROCEEDINGS

### A.    Earlier Custody Proceedings[2]

Andrea C. and Marcus K. are the divorced parents of two children, Daniel and Bryson.[3] Since their divorce, Andrea and Marcus have engaged in a contentious custody battle. Although Marcus originally received only supervised visitation with the children because he had a history of domestic violence,[4] Marcus enjoyed primary physical custody and shared legal custody immediately prior to the custody modification at issue in this appeal.

This significant shift in custody appears to have been the result of two factors. First, Marcus rebutted the domestic violence presumption, making it possible for the superior court to award him physical and legal custody. Second, the superior court had increasing concerns regarding Andrea's parenting. For example, in 2006 the court noted that both parents had "emotionally abused" the children, but that Marcus had made "great strides in his ability to deal with [the] confrontation and stress associated with divided parenting." The court described Andrea as "the primary person that continually subjects the children to emotional abuse" and believed she was unable to

---

[2]    We discuss the history of this custody dispute in some detail to provide relevant context.

[3]    At the time of the 2012 custody modification from which Andrea appeals, Daniel was eleven years old and Bryson was eight years old.

[4]    AS 25.24.150(g). A parent who has a history of perpetrating domestic violence is subject to a rebuttable presumption against an award of physical or legal custody. *Id.* A parent has a history of perpetrating domestic violence when "during one incident of domestic violence, the parent caused serious physical injury or . . . the parent has engaged in more than one incident of domestic violence." AS 25.24.150(h).

recognize her shortcomings as a parent. The court later characterized Andrea as "controlling" and "manipulative."

In a related 2007 proceeding, the superior court took evidence regarding an interaction between Andrea and Daniel, which the court described as "disturbing." A custody investigation ordered in a 2010 modification proceeding also raised concerns regarding Andrea's relationship with Daniel, noting, "[I]t is clear there is a serious problem between Mother and [Daniel]. [Daniel's] escalating behavior and verbal abuse towards Mother is a concern as well as Mother's sometimes inappropriate responses."

The superior court attempted to address these issues by ordering Andrea to complete a parenting class in 2006. And in 2007, in response to the "disturbing" interaction between Andrea and Daniel, the court ordered her to take an anger management class. Andrea failed to complete either requirement for several years and was eventually held in contempt. It appears Andrea may have completed the anger management course and started the parenting class in 2010.

## B. The Current Custody Dispute

The proceedings leading up to this appeal began when Andrea filed a custody modification request because of her new husband's impending move to New Jersey. Andrea briefly mentioned domestic violence in her motion to modify, stating "[domestic violence] is being addressed in another motion. I would, however, like the court[] to consider these issues when making its decision."

The same day she moved to modify custody Andrea also filed a motion for an order to show cause. Among other allegations, Andrea noted that Marcus had a history of domestic violence and that Marcus's second ex-wife, Angelec, had recently obtained a domestic violence protective order against him, which Andrea attached to her motion. Superior Court Judge Patrick J. McKay denied the motion for an order to show

cause but informed Andrea that she could raise these allegations at the custody modification trial.

The superior court also ordered that an earlier custody investigation be updated. The updated report stressed that the children continued to be placed in the middle of their parents' custody dispute and that the children needed consistency and stability above all to meet their needs. The report found Marcus was more capable and willing to meet the children's educational needs based on interviews with their teachers that indicated that Marcus was the more involved parent. The report also noted that both children preferred to stay in Anchorage so that they could "be near their friends and complete school with them."

The custody investigator concluded that the stability factor[5] favored Marcus because of his "support for the education of the children and for their team sports." And on domestic violence, the investigator noted, "[the Office of Children's Services] has been involved with this family on a historical basis but . . . nothing has been substantiated."[6] The investigator believed that "[t]he boys need to remain together" and underscored that they "need consistency" and "need to remain with their familiar teachers and friends." The report ultimately recommended that Marcus receive sole legal and primary physical custody, with Andrea having physical custody during seven consecutive weeks in the summer and over certain holidays.

---

[5] Alaska Statute 25.24.150(c) lists nine best interest factors a court should consider in making a custody determination, one of which is "the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." AS 25.24.150(c)(5).

[6] The report did not discuss the new domestic violence order that Angelec had obtained against Marcus.

The superior court held a custody trial in November 2012. Andrea called as a witness Dr. Laura Jones, a child psychologist who had worked with both children. While Dr. Jones noted that Andrea had "played an important role" in the children's therapy, Marcus "ha[d] been more actively involved." And Dr. Jones testified that Andrea and Daniel "ha[d] had a more emotionally reactive relationship over the years." Dr. Jones noted that "[Daniel] struggles when he does not have consistency and stability in his life, and certainly a big family move . . . creates a lack of consistency, a lack of stability . . . that has been difficult for [Daniel]." Dr. Jones explained that "for young kids, having physical . . . stability in terms of a very regulated, continual . . . experience of their life, their surroundings, the people they're with leads . . . to psychological stability."

Andrea never introduced any evidence supporting her allegations of Marcus's history of domestic violence, notwithstanding her brief reference to domestic violence in her motion for an order to show cause and the superior court's statement to her that she could address her allegation in the custody trial.

The superior court found that Andrea's move out of Alaska constituted a substantial change in circumstances and then reviewed the statutory best interest factors to make its custody decision. The court found that "[Daniel] has some special educational and emotional needs which are currently being met here in Alaska." The court noted that "both parties have the capability and desire to meet most of the children's needs, [but] . . . the parties seem to be unable to control themselves or [are] oblivious as to how their continual bickering affects their children's development." The court did not give significant weight to the children's preference because of their age and because "any preference . . . [was] in all probability not free of suggestion from their parents."

The court found that "there is clearly love and affection . . . between both children and each parent." And on the stability factor, the court found that "even prior to [Andrea's] move . . . , [Marcus's] home, with the paternal grandparents, ha[s] been a stable and satisfactory environment, probably the most stable environment in their lives; Dr. Jones has testified both previously and at this hearing, that stability is extremely important for [Daniel]." The court found that "both parties express a desire to allow an open and loving, frequent relationship between their children and the other parent, [but] neither parent [does] particularly well at this."

Regarding the domestic violence presumption, the superior court determined that "there [was] no *current* evidence of any domestic violence . . . in either household which would affect this court's decision at this time." (Emphasis added.) And the court found no evidence of substance abuse by either parent.

The superior court awarded Marcus sole legal and primary physical custody; it awarded Andrea physical custody for seven consecutive weeks in the summer and over certain holidays. The court noted that "the overwhelming recommendation from the experts . . . is the need for continuity and stability in [Daniel's] and [Bryson's] li[ves]."

Andrea filed a motion for reconsideration, arguing that her earlier motion to show cause regarding Marcus's alleged domestic violence was "not taken into consideration." The superior court denied her motion, and Andrea appealed.[7] We remanded for clarification on the domestic violence issue and gave the court the option to take additional evidence, but did not require it to do so.[8]

---

[7]     *Andrea C. v. Marcus K.*, No. S-14996 (Alaska Supreme Court Order, July 28, 2014).

[8]     *Id.* at 4.

## C.   The Superior Court's Supplemental Findings

Judge McKay made additional findings without holding another hearing.[9] He noted that Andrea was not a credible witness and that "[n]o other witnesses testified as to Marcus'[s] propensity for domestic violence."[10]  Judge McKay also indicated that he had listened to the hearing on Angelec's long-term domestic violence petition, which had been conducted by another judge, and "[did] not find that the entry of that order should in any way be considered as a 'qualifying' long[-]term protective [order] under AS 25.24.150(g)."[11]

Judge McKay specifically took issue with (1) the procedure used in the domestic violence proceedings; (2) Marcus being informed by the judge that the order would not affect him unless he violated it; and (3) Marcus being told by the judge to focus on staying away from Angelec as opposed to filing an appeal or Civil Rule 60(b) motion.[12]  Judge McKay determined that Andrea's evidence did not support a finding that Marcus had a renewed history of domestic violence, and he affirmed his decision to give no weight to the domestic violence factor.[13]  We permitted the parties to file supplemental briefs addressing his findings on remand.

---

[9]     *Marcus K. v. Andrea C.*, No. 3AN-04-08093 CI (Alaska Super., Aug. 4, 2014).

[10]     *Id.* at 1.

[11]     *Id.* at 2.

[12]     *Id.* at 2 n.1.

[13]     *Id.* at 2.

## III. STANDARD OF REVIEW

The superior court has "broad discretion in determining whether a proposed child-custody modification is in [a] child's best interests."[14] We will reverse a superior court's custody modification only where the record demonstrates an abuse of discretion, or when the court's controlling findings of fact were clearly erroneous.[15]

An abuse of discretion in the custody modification context occurs when in reaching its decision the trial court "consider[ed] improper factors, fail[ed] to consider statutorily mandated factors, or g[ave] too much weight to some factors while ignoring others."[16] "In the context of a custody modification decree, this analysis must be applied to assess whether the superior court was justified in changing the previous custody determination."[17]

Factual findings are clearly erroneous if we are left with a definite and firm conviction that the superior court was mistaken.[18]

"The applicability of collateral estoppel to a particular set of facts is a question of law subject to independent review."[19] But we review the decision to apply

---

[14] *Heather W. v. Rudy R.*, 274 P.3d 478, 481 (Alaska 2012) (quoting *Rego v. Rego*, 259 P.3d 447, 452 (Alaska 2011)) (internal quotation marks omitted).

[15] *Id*. (citing *McLane v. Paul*, 189 P.3d 1039, 1042 (Alaska 2008)).

[16] *Kessler v. Kessler*, 827 P.2d 1119, 1119 (Alaska 1992) (citing *S.N.E. v. R.L.B.*, 699 P.2d 875, 878 (Alaska 1985)) (per curiam).

[17] *Gratrix v. Gratrix*, 652 P.2d 76, 80 (Alaska 1982).

[18] *Heather W.*, 274 P.3d at 481(citing *Barrett v. Alguire*, 35 P.3d 1, 5 (Alaska 2001)).

[19] *State v. United Cook Inlet Drift Ass'n*, 895 P.2d 947, 950 (Alaska 1995) (citing *Rapoport v. Tesoro Alaska Petrol. Co.*, 794 P.2d 949, 951 (Alaska 1990)).

collateral estoppel when its technical requirements[20] are otherwise satisfied for abuse of discretion.[21] We will find an abuse of discretion when the superior court has acted in a manifestly unreasonable manner.[22]

## IV. DISCUSSION

We interpret Andrea's appeal as presenting two sets of issues. First, we consider the superior court's treatment of Andrea's domestic violence allegations. Second, we consider the court's balancing of the remaining best interest factors.

### A. The Superior Court Did Not Err When It Gave No Weight To The Domestic Violence Allegations Against Marcus.

Andrea argues that there is sufficient evidence in the record to establish that Marcus has a history of domestic violence. And she contends that the superior court

---

[20] These elements are:

1. The plea of collateral estoppel must be asserted against a party or one in privity with a party to the first action;

2. The issue to be precluded from relitigation by operation of the doctrine must be identical to that decided in the first action; [and]

3. The issue in the first action must have been resolved by a final judgment on the merits.

*Sopcak v. Northern Mountain Helicopter Servs.*, 924 P.2d 1006, 1009 (Alaska 1996) (quoting *Campion v. State, Dep't of Cmty. & Reg'l Affairs*, 876 P.2d 1096, 1098-99 (Alaska 1994)).

[21] *Misyura v. Misyura*, 242 P.3d 1037, 1040 (Alaska 2010). But the superior court's discretion "must be tempered by principles of fairness in light of the circumstances in each particular case." *Id.* (quoting *Borg-Warner Corp. v. Avco Corp. (Lycoming Div.)*, 850 P.2d 628, 635 (Alaska 1993)) (internal quotation marks omitted).

[22] *See Collins v. Arctic Builders*, 957 P.2d 980, 981 (Alaska 1998) (quoting *Sheehan v. Univ. of Alaska*, 700 P.2d 1295, 1297 (Alaska 1985)).

must make new findings regarding whether Marcus has rebutted the domestic violence presumption at each custody modification, even when there have been no new allegations since the last modification order. She asserts that the superior court's findings in this most recent modification proceeding were insufficient.

We see no error with respect to the superior court's treatment of the prior allegations of domestic violence against Marcus. Marcus successfully rebutted the domestic violence presumption in 2006, and he has been awarded increasing custody of the children since then. We read the court's findings in the present custody modification as recognizing that Marcus had a past history of domestic violence, but that there were no current concerns and that the children would be best served by remaining in Marcus's custody, particularly in light of its concerns regarding Andrea.

We agree that the superior court's initial findings were problematic with respect to the new domestic violence order Angelec obtained, but the court's supplemental findings have resolved our concerns. Andrea's inclusion of the protective order granted to Angelec appears to have been an attempt to establish, through non-mutual, offensive collateral estoppel,[23] that Marcus had committed domestic violence against Angelec. A new instance of domestic violence might have been sufficient to trump Marcus's earlier rebuttal of the presumption against custody. But we need not — and do not — decide what effect a new incident of domestic violence would have had

---

[23]    "Offensive use of collateral estoppel occurs where a plaintiff seeks to preclude a defendant from relitigating an issue that the defendant previously litigated unsuccessfully against the same or a different party." *United Cook Inlet Drift Ass'n*, 895 P.2d at 950 n.7. We have previously held that "the decision to apply collateral estoppel is within the discretion of the trial court, although this discretion must be tempered by principles of fairness in light of the circumstances in each particular case." *Misyura*, 242 P.3d at 1040 (quoting *Borg-Warner Corp.*, 850 P.2d at 635) (internal quotation marks omitted).

because the superior court did not abuse its discretion in choosing not to apply collateral estoppel against Marcus.

"[C]ollateral estoppel bars relitigation, even in an action on a different claim, of all issues of fact or law that were actually litigated and necessarily decided in [a] prior proceeding."[24] The doctrine's application here could arguably prevent Marcus from contesting that he had recently committed a new crime of domestic violence. But the superior court retains discretion regarding when it will apply the doctrine.[25] The court permissibly exercised that discretion here.

First, the judge hearing Angelec's domestic violence petition found she had *not* proven the underlying domestic violence allegation in her petition. Thus, there was no apparent reason for that judge to have granted a protective order because Marcus had not been found to have done anything that would require changing the status quo.

Second, the judge hearing Angelec's domestic violence petition based his entry of the protective order on two earlier violations of a civil no-contact order by Marcus. It is not clear from the judge's comments at the domestic violence hearing which earlier instances he was referencing. And while Marcus had been fined previously for violating the no-contact order, the judge hearing Angelec's petition had not previously issued a protective order in response to the violations. Judge McKay was understandably reluctant to apply collateral estoppel where the judge presiding over the domestic violence proceedings had not previously issued a protective order even though Marcus twice violated a civil no-contact order, had found as a matter of fact that Marcus did not commit domestic violence against Angelec, but had issued a protective order

---

[24]    *Wall v. Stinson*, 983 P.2d 736, 740 (Alaska 1999) (quoting *Campion*, 876 P.2d at 1098) (first alteration added, second alteration in original) (internal quotation marks omitted).

[25]    *Misyura*, 242 P.3d at 1040.

anyway based on Marcus's previous violations of the civil no-contact order (for which he had already been fined).

Third, the judge presiding over the domestic violence proceeding twice told Marcus that the new protective order would have no impact on his life so long as he did not violate it. Notably, the judge failed to explain that the protective order could have a significant negative impact in future child custody proceedings. To someone unfamiliar with the law, the judge's "no impact" statement might have dissuaded Marcus from appealing the protective order. Taking Marcus's entire situation into account, the judge's explanation was clearly incorrect. Marcus is a parent engaged in a contentious, on-going custody dispute with a prior finding that he has a history of domestic violence; an order finding that he had committed additional domestic violence has serious potential to affect his custody of the children.

Judge McKay carefully evaluated the record and evidence from Angelec's domestic violence protective order proceedings and permissibly concluded that the way in which that proceeding was conducted justified not giving that order credence. We conclude that Judge McKay did not abuse his discretion when he chose not to permit Andrea to establish that Marcus committed domestic violence against Angelec through non-mutual, offensive collateral estoppel.

This holding raises the question whether Andrea should have been given another opportunity to prove Marcus had committed domestic violence because she was

representing herself.[26]  Indeed, we have imposed additional obligations on the superior court when self-represented litigants allege domestic violence.[27]

But the facts of this case are materially different from our earlier cases, and we conclude that the superior court's decision not to hold another hearing was an appropriate exercise of the court's discretion.  The court earlier had explicitly informed Andrea that she could present evidence of domestic violence at the custody hearing.  Andrea failed to do so.  And nothing in the record indicates that Andrea had personal knowledge regarding Marcus's alleged acts of domestic violence against Angelec, making any requirement that the court question *Andrea* about those allegations an exercise in futility.[28]  On the facts of this case, the court was not required to provide Andrea with a new opportunity to prove her domestic violence allegations against Marcus.

---

[26]     To the extent Andrea argues that our remand order required the superior court to hold another hearing, she is incorrect.  Our order gave the superior court the option of holding another hearing, but did not require it to do so. *Andrea C. v. Marcus K.*, No. S-14996 (Alaska Supreme Court Order, July 28, 2014).

[27]     *See, e.g.*, *Williams v. Barbee*, 243 P.3d 995, 1005 (Alaska 2010) (holding that the superior court should have inquired into pro se party's allegations of domestic violence in her pleadings and should have allowed party to present evidence in support of those allegations); *Parks v. Parks*, 214 P.3d 295, 300 (Alaska 2009) (holding that the superior court should have inquired further into pro se party's domestic violence allegations).

[28]     *See* Alaska R. Evid. 602 (requiring fact witnesses to testify based on personal knowledge); *Williams*, 234 P.3d at 1005; *Parks*, 214 P.3d at 300.

**B. The Superior Court Correctly Analyzed The Best Interest Factors.**

The superior court's custody modification decision must be guided by the best interest factors listed in AS 25.24.150(c).[29] While the "court cannot assign disproportionate weight to particular factors while ignoring others, it has considerable discretion in determining the importance of each statutory factor in the context of a specific case and is not required to weigh the factors equally."[30]

**1. The superior court did not err when it found the children's needs were being met in Alaska.**

The superior court generally found that Daniel had some special needs that were being met in Alaska and that both parents wanted to and could meet their children's needs. Overall, the superior court weighed these factors in favor of Marcus because both children, especially Daniel, needed continuity and consistency — and their Alaska home provided that.

Andrea argues that the superior court "neglected . . . to make any findings as to whether the needs of the children could be adequately met by Andrea in any other state or, more importantly, whether Andrea was more willing and able to meet the needs of the children than Marcus." But a "court's ultimate decision to give determinative weight to one of [the best interest] factors and the consequent emphasis it placed on this factor do not, standing alone, establish that it ignored the remaining factors or gave them inadequate weight."[31] Here, the court sought to ensure that Daniel and Bryson had

---

[29]    AS 25.24.150(a), (c).

[30]    *Williams*, 243 P.3d at 1005 (quoting *Barlow v. Thompson*, 221 P.3d 998, 1005 (Alaska 2009)) (alteration omitted) (internal quotation marks omitted).

[31]    *Ebertz v. Ebertz*, 113 P.3d 643, 649 (Alaska 2005).

stability in their lives, especially because both parents destabilized matters due to their inability to cooperate over the course of this custody dispute.

The testimony amply supports the superior court's finding that the children, especially Daniel, needed emotional stability — a need that was best met in Alaska in Marcus's continued custody. Andrea was the parent with whom Daniel had the more difficult relationship. And the children's psychologist was concerned about how a cross-country move would impact Daniel, noting that physical stability leads to psychological stability for young children. Thus, while the court recognized Andrea might personally have the capability and desire to meet Daniel and Bryson's needs, the court did not err in finding it was not in the children's best interest to relocate with her.

### 2. The superior court did not assign disproportionate weight to the stability factor.

Relying on *Moeller-Prokosch v. Prokosch*,[32] Andrea argues that the superior court weighed the stability factor too heavily and "gave too little consideration to the community, (and more importantly, the extended family), of the minor child[ren] in the New Jersey area." Andrea also argues that the superior court's decision "shatter[ed] the bonds" between Daniel and Bryson and their half-brother, Charles.

"The continuity factor has two components: maintaining geographic continuity and maximizing relational stability."[33] Andrea is correct that "[a] continuity test centered entirely on the child's geographical stability would always favor placing the child with the non-moving parent."[34] Indeed, the superior court "may properly award primary custody to the relocating parent when that parent offers superior emotional

---

[32]    99 P.3d 531, 535 (Alaska 2004).

[33]    *Blanton v. Yourkowski*, 180 P.3d 948, 953 (Alaska 2008).

[34]    *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001).

stability."[35] The real question on appeal is whether the court engaged in a "comprehensive inquiry into each parent's respective ability to maintain stable and satisfactory relations between themselves and the child."[36]

The record supports the superior court's finding in favor of Marcus. The custody investigator's report stressed that Bryson and Daniel continued to be placed "in the middle" of their parents' custody dispute and needed consistency and stability.[37] The investigator noted that Marcus provided a more stable environment and stated that "[t]he boys need to remain together" and "need to remain with their familiar teachers and friends." Andrea, on the other hand, had a tumultuous relationship with Daniel, was repeatedly ordered by the court to undertake parenting and anger management classes, failed over a protracted period to take these classes, and failed to acknowledge her shortcomings as a parent.

The facts support the superior court's conclusion that Andrea's home would not provide as emotionally stable an environment for the children as Marcus's home. Dr. Jones's comments regarding the importance of stability for young children further emphasizes the necessity of stability for Daniel and Bryson.

Regarding Andrea's assertion that the superior court's decision "shatter[ed] the bonds" between the boys and their half-brother, we have said that where "[a] review of the record reveals little evidence that sibling bonds were of overwhelming importance to [a sibling] or to his well-being . . . weighing sibling bonds less than other factors [is]

---

[35] *Id.*

[36] *Id.* (quoting *McQuade v. McQuade*, 901 P.2d 421, 426 (Alaska 1995)) (internal quotation marks omitted).

[37] While the court gave it no weight, we note that the children also indicated that they wanted to be in Anchorage to "be near their friends and complete school with them."

not an abuse of discretion."[38] Here, Daniel and Bryson shared a custodial household with their half-brother for only the first 10 months of their half-brother's life. The court's decision not to give particular weight to the half-sibling relationship in its determination of the best interest factors was not an abuse of discretion.[39]

Thus, we conclude that the superior court did not err in its consideration of the stability factor.

## V.    CONCLUSION

For the reasons stated above, we AFFIRM the decision of the superior court.

---

[38]    *Stephanie W. v. Maxwell V.*, 274 P.3d 1185, 1192 (Alaska 2012).

[39]    *See, e.g., Craig v. McBride*, 639 P.2d 303, 306 (Alaska 1982). In *Craig*, the half-siblings were separated for substantial lengths of time, and the superior court determined that the sibling relationship was not critical for the child's social development. *Id.* at 306 n.11. There, this court stated: "Though maintaining sibling relationships will typically be in the best interests of the child, cases will undoubtedly arise where the best interests of the child dictate otherwise." *Id.* at 306. This is such a case.