MALLORY D., Appellant,

v.

MALCOLM D., Appellee.

No. S–14436.

Supreme Court of Alaska.

Dec. 28, 2012.

---

Mallory D., pro se, Palmer, Appellant.

Tara Logsdon, Golter & Logsdon, P.C., Palmer, for Appellee.

Before: FABE, Chief Justice, CARPENETI, WINFREE, and STOWERS, Justices.

## OPINION

STOWERS, Justice.

## I. INTRODUCTION

Malcolm D. and Mallory D.[1] were married and had three children, Jason, Brooke, and Megan. In August 2009 Malcolm and Mallory filed a petition for dissolution of marriage. The parties agreed to joint legal custody and shared physical custody. In May 2010 Mallory moved to modify custody; she wanted sole legal and primary physical custody of Brooke and Megan, as well as additional

---

**1.** Pseudonyms have been used throughout this opinion to protect the identity of the parties.

visitation with Jason. Mallory asserted a change in circumstances because Brooke reported being singled out among the children for punishment and Malcolm being mean to her. Malcolm opposed, contending there was no change in circumstance to warrant custody modification and that the modification would not be in the best interests of the children.

The superior court found that there was a change in circumstance regarding Brooke and Megan but denied Mallory's motion to modify custody for the daughters.

The court found that Malcolm and Mallory had each committed two acts of domestic violence during the marriage but that neither parent was less likely than the other to perpetrate domestic violence in the future.[2] The superior court concluded that under these circumstances, the presumption in AS 25.24.150(g), which would preclude a parent from obtaining legal or physical custody of the children if that parent had a history of domestic violence against the other parent, did not apply to either parent in this case. The superior court fashioned the custody decree taking into consideration the best interests of the children notwithstanding the requirements of AS 25.24.150(h).

We conclude that when both parents are found to have a history of domestic violence and neither parent is more likely to perpetrate violence than the other, the superior court has the discretion to determine that the presumption set forth in AS 25.24.150(g) does not apply. We further conclude that the superior court did not clearly err when making its factual findings and did not abuse its discretion when it weighed the best interest factors under AS 25.24.150(c) and determined that custody should not be modified.

## II. FACTS & PROCEEDINGS

Malcolm D. and Mallory D. were married in 1993. They have three minor children,

Jason, Brooke, and Megan. In August 2009 Malcolm and Mallory filed a petition for dissolution of marriage. In their petition, they checked the "yes" box for the question, "Has there been any domestic violence during the marriage (whether or not a complaint was filed)?" The parties agreed to joint legal custody and shared physical custody on a week on/week off basis.

Around September 2009 Malcolm starting dating Holly, a family friend, and she and her daughter moved in with Malcolm and his children in November 2009. Holly's daughter had been friends with Brooke before the dissolution.

Master David L. Zwink held a hearing on the dissolution petition in October 2009 at which both Malcolm and Mallory appeared pro se. The parties later submitted a document updating their custody arrangement so that Jason would spend 70% of his time with Malcolm and 30% of his time with Mallory. In January 2010 the superior court approved the master's recommended decree of dissolution of marriage and memorialized the custody arrangement in a child support order.

In May 2010 Mallory moved to modify custody. She sought sole legal and primary physical custody of Brooke and Megan, as well as additional visitation with Jason to reach the previously agreed-upon 70/30 split. In her affidavit Mallory chronicled several text message exchanges between herself and Brooke in which Brooke stated that she was singled out among the children (including Holly's daughter) and punished, and that Malcolm was mean to her or yelled at her. Malcolm contended there was no change in circumstance to warrant custody modification and that the modification would not be in the best interests of the children. In his affidavit Malcolm stated that he had a close relationship with his children and the conflict with Brooke stemmed from her dislike of

---

**2.** The superior court found that "neither party is less likely to [perpetrate] the violence than the other party." The court was attempting to follow the language of AS 25.24.150(i)(1) which states in pertinent part:

(i) If the court finds that both parents have a history of perpetrating domestic violence under (g) of this section, the court shall either

(1) award sole legal and physical custody to the parent who is less likely to continue to perpetrate the violence and require that the custodial parent complete a treatment program . . . .

chores and her complaints to her mother about Malcolm's insistence that she do them.

A custody investigator interviewed Malcolm and Mallory, as well as Jason, Brooke, and Megan, and filed a limited custody investigation report in November 2010. The report explained, "This brief investigation and report should not be considered a substitute for the more in-depth analysis that is required to develop recommendations for long-term placement in the parties' divorce or custody action." The custody investigator's assessment stated:

> Based on the children's reports there appears to be some conflict between Father and [Brooke] which appears to be typical of many parents and their adolescent children. In a family where there is a divorce, children can easily learn to manipulate their parents when they don't like the punishment they are receiving. [Brooke] appears to be doing this; running to Mother when she does not like what happens at Father's. While there is nothing inappropriate about [Brooke] confiding in her mother, the problem arises when there is a perceived alignment with the child by one parent against the other parent. This can serve to undermine the other parent's authority and relationship with the child. Like all children, [Brooke] needs to learn to resolve conflict and deal with the consequences of her actions.

On April 4, 6, and May 31, 2011, Superior Court Judge Eric Smith held a bench trial on two issues—the custody modification and the division of marital assets, the family home.[3]

The bulk of the testimony was about the parents' relationship with Brooke, who had just turned 13.

Because Mallory testified that Malcolm committed domestic violence, the court and the attorneys for the parties spent significant time discussing AS 25.24.150(g) which states, "There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner may not be awarded sole legal custody, sole physical custody, joint legal custody, or joint physical custody of a child."[4] The court stated that because this rebuttable presumption is inflexible, if it found that Malcolm had a history of committing domestic violence in the marriage, Mallory would have to be awarded sole legal and physical custody of all three children (as opposed to Jason staying with his father), and Malcolm would have to enroll in a batterer's program. Malcolm also testified to two instances of domestic violence by Mallory when Mallory slapped him. The court discussed how the statute was silent if the court were to find that both Malcolm and Mallory had a history of committing domestic violence but neither was likely to continue to perpetrate the violence.[5]

The court issued an order finding that there was a change in circumstances regarding Brooke and Megan but denying Mallory's motion to modify custody for the daughters. It granted Mallory's motion regarding visitation with Jason. In its 19–page order the court addressed each of the custody criteria outlined in AS 25.24.150(c).[6] It found

**3.** Mallory does not appeal the court's decision to deny her motion to require Malcolm to buy out her interest in the home.

**4.** AS 25.24.150(h) defines a "history of perpetrating domestic violence": "A parent has a history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence."

**5.** AS 25.24.150(i) provides:
> If the court finds that both parents have a history of perpetrating domestic violence under (g) of this section, the court shall either (1) award sole legal and physical custody to the

parent who is less likely to continue to perpetrate the violence and require that the custodial parent complete a treatment program; or (2) if necessary to protect the welfare of the child, award sole legal or physical custody, or both, to a suitable third person if the person would not allow access to a violent parent except as ordered by the court.

**6.** Alaska Statute 25.24.150(c) states:
> The court shall determine custody in accordance with the best interests of the child under AS 25.20.060–25.20.130. In determining the best interests of the child the court shall consider
> (1) the physical, emotional, mental, religious, and social needs of the child;
> (2) the capability and desire of each parent to meet these needs;

that Malcolm and Mallory "have different expectations for the children and different disciplinary styles" and that tension existed between Brooke and Malcolm but was improving. The court also addressed the domestic violence issue, finding that Malcolm and Mallory had each committed two acts of domestic violence during the marriage. The court explained:

> Since both parties committed two acts of domestic violence on the other, they each have a history of domestic violence as that term is defined by AS 25.24.150(h). Pursuant to AS 25.24.150(i)(1), the court accordingly must evaluate which of the parties is less likely to [perpetrate] the violence.[7] The court finds that neither party is less likely than the other to do so. The incidents of violence between the parties occurred during arguments fueled by alcohol. The relationship was strained. The court accordingly concludes that the violence was situational, caused by the specific dynamic between the parties, and is not likely to recur by either party.
>
> . . .
>
> AS 25.24.150(i)(1) does not address the situation before the court, where neither party is less likely to [perpetrate] the violence than the other party. The court concludes that under these circumstances, the presumption set forth in AS 25.24.150(g) does not apply to either party and hence that the court is free to fashion a custody de-

cree that meets the best interests of the children notwithstanding the requirements of AS 25.24.150(h).

> As noted above, there was domestic violence in the marriage. But because it was situational and because both parties are unlikely to repeat these actions, the court finds that domestic violence is not a factor that precludes the parties from sharing custody of the girls.

Mallory filed a motion to reconsider which the superior court denied.

Mallory, acting pro se, appeals.

## III. STANDARD OF REVIEW

The superior court has "broad discretion in its determination of child custody."[8] We will not set aside the superior court's child custody determination "unless its factual findings are clearly erroneous or unless it abused its discretion."[9] We will find the trial court's underlying factual findings clearly erroneous only "when our review of the entire record leaves us 'with a definite and firm conviction that a mistake has been made.' "[10] "The trial court's factual findings enjoy particular deference when they are based primarily on oral testimony, because the trial court, not this court, judges the credibility of witnesses and weighs conflicting evidence."[11] "An abuse of discretion in child custody awards occurs when 'the trial court considers improper factors, fails to con-

(3) the child's preference if the child is of sufficient age and capacity to form a preference;
(4) the love and affection existing between the child and each parent;
(5) the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;
(6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;
(7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents;

(8) evidence that substance abuse by either parent or other members of the household directly affects the emotional or physical well-being of the child;
(9) other factors that the court considers pertinent.

7. The court found there was "absolutely no need to send the children to a third party." *See* AS 25.24.150(i), quoted in footnote 4.

8. *Cusack v. Cusack*, 202 P.3d 1156, 1158–59 (Alaska 2009).

9. *Id.* at 1159.

10. *Millette v. Millette*, 177 P.3d 258, 261 (Alaska 2008) (quoting *Dingeman v. Dingeman*, 865 P.2d 94, 96 (Alaska 1993)).

11. *Sheffield v. Sheffield*, 265 P.3d 332, 335 (Alaska 2011) (internal quotation marks omitted).

sider statutorily mandated factors, or gives too much weight to some factors.' " [12] Whether the trial court applied the correct legal standard in its custody determination is a question of law that we review de novo, "adopting the rule of law that is most persuasive in light of precedent, reason and policy." [13]

## IV. DISCUSSION

### A. The Superior Court's Factual Findings Were Not Clearly Erroneous.

#### 1. The domestic violence

Mallory argues that the superior court erred when it determined that both she and Malcolm each committed two acts of domestic violence. She asserts that Malcolm committed more than two acts and that there was no "credible evidence" that she had committed any.

The court did not clearly err when it found that each party committed two acts of domestic violence. Mallory testified that Malcolm had been physical with her two times—choking her during a camping trip and similarly attacking her in their home. Malcolm testified that Mallory slapped him on two occasions. The court acknowledged, "It was difficult to assess the credibility of these contentions. There were no witnesses ... [and the] alleged violence never came up while the parties were engaging in marital counseling with Tom Lytle." The court relied on the testimony of Dot Littleton, Mallory's therapist, to corroborate Mallory's testimony regarding the two acts that Malcolm allegedly committed. Littleton testified that Mallory had reported these two acts to her in their sessions.

Mallory asserts that the record supports two additional instances of domestic violence by Malcolm because she alleges that Malcolm grabbed her arm and pushed a coffee table across a room during an argument. Malcolm conceded in an affidavit before the superior court that he grabbed Mallory's arm and

pushed a coffee table during this argument, but he asserts that this was not domestic violence. Mallory's testimony at trial included the allegation that Malcolm frightened her by pushing a coffee table, but she did not mention Malcolm grabbing her arm. Littleton also did not mention Malcolm grabbing Mallory's arm when she described how Mallory recounted this story during therapy.

It is the trial court's responsibility to judge the credibility of witnesses and weigh conflicting evidence. [14] The court did so in making its findings regarding whether these confrontational incidents rose to the level of domestic violence. It was not clear error for the court to decline to view the grabbing of the arm and pushing of the coffee table as instances of domestic violence when some of the conflicting testimony from the witnesses and the parties suggested the incidents were not domestic violence, or were not contemporaneously perceived to be domestic violence.

Although Mallory testified that she had not committed any acts of domestic violence, Malcolm testified to her twice slapping him, and Littleton testified that she had a vague memory of Mallory admitting to pushing Malcolm during one of their therapy sessions. Again, it was not clear error for the superior court to find that Mallory committed two acts of domestic violence because it is the trial court's responsibility to judge the credibility of witnesses and weigh conflicting evidence. [15]

#### 2. The finding that neither party is less likely than the other to perpetrate domestic violence

Mallory argues that it was error for the superior court to find that neither party was less likely than the other to perpetrate violence and that the violence that had occurred was situational. Mallory contends that the marriage counselor, Tom Lytle, testified that Malcolm had anger problems which were made worse by drinking alcohol,

12. *Id.* (quoting *Long v. Long,* 816 P.2d 145, 150 (Alaska 1991)).

13. *Nelson v. Nelson,* 263 P.3d 49, 52 (Alaska 2011) (quoting *McQuade v. McQuade,* 901 P.2d 421, 423 n. 3 (Alaska 1995)).

14. *See Sheffield,* 265 P.3d at 335.

15. *See id.*

and from this Mallory argues that Malcolm was more likely than Mallory to perpetrate domestic violence. The court acknowledged that Lytle's testimony was "concerning" but recognized that Malcolm had been in counseling with Brooke to address his parenting skills and that Malcolm's fiancée, Holly, "testified credibly" that there had been no domestic violence since she and Malcolm started living together. Based on the evidence presented, it was not clear error for the court to determine that the discrete instances of domestic violence were situational and that "neither party is less likely" than the other to perpetrate the domestic violence.

### 3. The court's characterization of Brooke as a "currently difficult teenager"

█ Mallory takes issue with the superior court's passing characterization of Brooke as a "currently difficult teenager." The court stated that Malcolm was in counseling with Brooke "to learn the necessary tools to interact in a positive way with a currently difficult teenager." Mallory argues that the record reflects that Brooke only had difficulties with her father, but that her school counselor had testified that Brooke was a nice girl.

The superior court did not clearly err when characterizing Brooke as a "currently difficult teenager." The child custody investigator reported Jason stating that Brooke was "sassing" Malcolm and "being rude or mean to Megan." Malcolm testified that Brooke lied to him, which also comports with what he told the child custody investigator. These kinds of actions would warrant a teenager being characterized as "difficult."

### 4. The finding that Malcolm is taking steps to learn from his previous parental errors

█ Mallory argues that the superior court misunderstood the evidence about Malcolm's counseling efforts and that the counseling he attended with Brooke was for Brooke's benefit, not his. She argues that it was "improper" for the court to give Malcolm "credit" for taking steps to learn from his previous parental errors.

There is no indication that the superior court misunderstood the evidence presented at trial. Malcolm testified that he was not in independent counseling and acknowledged that he struggled with working on recognizing other people's emotional needs. He testified that he had been to counseling with Brooke five to eight times and that things were getting better between them. He described some strategies he, the counselor, and Brooke had developed regarding Brooke's cell phone use. The superior court did not clearly err in finding that Malcolm "is taking steps to try to learn from [his] errors and not to repeat them" by attending Brooke's counseling sessions.[16]

### B. The Superior Court Did Not Abuse Its Discretion When It Denied Mallory's Motion To Modify Custody.

### 1. The superior court's determination that both parents are equally able to meet the needs of their children

█ Mallory argues that the superior court should not have determined that both parents were equally able to meet the physical, emotional, mental, religious, and social needs of the children under AS 25.24.150(c)(2), contending that Malcolm did not meet the needs of the children as well as she did.[17] For support Mallory points to three issues: Megan's health; allegations that Megan got hurt while Malcolm was drunk; and Malcolm's conflicts with Brooke.

Mallory argues that Malcolm took Megan off of a gluten-free diet "with no medical oversight and without seeking a professional opinion." Megan was complaining of stomach aches and headaches, and Mallory surmised it was a gluten allergy because she has a similar allergy. Megan's pediatrician suggested trying a gluten-free diet for two weeks. Malcolm implemented the diet for

---

**16.** We have considered Mallory's other arguments alleging that the superior court made erroneous findings of fact, particularly with regard to Mallory's relationship with her therapist. We conclude that the superior court did not clearly

err in making these findings, or if there was error, any error was harmless.

**17.** *See* AS 25.24.150(c)(2), quoted in footnote 4.

two weeks and then stopped, believing that Megan's condition was not related to a gluten allergy but rather to irregular movements and common headaches. There were some communication issues and confusion between Malcolm and Mallory as to why Malcolm took Megan off the diet, but once Malcolm received a letter from the pediatrician clarifying that the diet should be resumed, Malcolm placed Megan back on the gluten-free diet. The court found that the parents had an "honest disagreement" on this issue and did not find that one parent was better suited to meet Megan's needs based on this occurrence. The court did not clearly err in making this finding, and it was not an abuse of discretion for the court not to weigh this occurrence against Malcolm.

Mallory also asserts Malcolm does not meet the needs of the children as well as she does based on her testimony that Megan received a bruised knee from Malcolm falling on her while drunk. There was no corroborating evidence to support Mallory's allegation that Malcolm caused the injury, and the superior court did not mention the incident in its order. Based on the lack of corroborating evidence and the fact that it is the superior court's function to weigh the evidence and make credibility determinations, it was not clear error or an abuse of discretion for the superior court to disregard this allegation when assessing this factor.

Mallory next points to her testimony that Malcolm had been drunk when his off-road truck rolled over while he was holding two-year-old Megan, crushing her finger and requiring her to have surgery. Malcolm testified that he was not drunk when the accident occurred. The superior court did not mention this incident in its order, either. Again, it was not clear error or an abuse of discretion to omit making a finding on this allegation in the absence of corroborating evidence.

Finally, Mallory points to the conflict between Brooke and Malcolm to argue that Malcolm does not meet the needs of the children as well as she does. The focus of the testimony about Brooke was on her emotional and social needs. The superior court found that "while each parent has not behaved as appropriately as they should have behaved, they nevertheless are equally capable of meeting [Brooke's] emotional and social needs." This finding was not clearly erroneous. The court described Brooke, who had just turned 13, as "presenting the many challenges often presented by girls of that age." This finding was supported by the custody investigator's report which described Brooke's conflicts with her father about chores, the use of her phone, how she dressed, and how much makeup she wore. Malcolm acknowledged at trial that he had made several parenting mistakes. The court found that "much of the tension that exists between Brooke and her father is due to [Malcolm's] actions." However, the court went on to address Mallory's tendency to take Brooke's side in any conflict with Malcolm, which was demonstrated in the text message exchanges chronicled in Mallory's affidavit. The court characterized some of Mallory's texts as "almost derisive" of Malcolm. The court also found that Malcolm "intellectually, at least, ... understands that changes need to be made" as indicated by his testimony of attending counseling with Brooke, while Mallory "by contrast, does not seem to understand how she has contributed to the problem." Based on the evidence, it was not clear error or an abuse of discretion for the court to consider each parent's shortcomings and determine that the parents are equally capable of meeting Brooke's emotional and social needs.

### 2. The superior court's consideration of Brooke's preference to live with Mallory

■ Mallory argues that the superior court did not properly weigh Brooke's desire to live full-time with Mallory.[18] The court acknowledged that Brooke wanted to live with Mallory but stated that it "will not give much weight to Brooke's preference, however, because she is young, does not appear to be more mature than her age, and prefers her mother in substantial part because her mother has rather uncritically taken her side in her dispute with her father."

---

**18.** *See* AS 25.24.150(c)(3), quoted in footnote 4.

The court did not abuse its discretion by not giving Brooke's preference much weight. Brooke had just turned 13 when the court made the findings. We have held that "a teenager's preference can be a deciding factor because, while a young child's preferences are often unreliable, 'a relatively mature teenager's reasoned preference is not so lightly to be disregarded.'"[19] However, the trial court found that Brooke was not relatively mature when she expressed her preference and that she "prefer[red] her mother in substantial part because her mother has rather uncritically taken her side in her dispute with her father." The superior court did not abuse its discretion when assessing this factor.

### 3. The superior court's assessment that continuity favors continuing the present shared custody arrangement

 Mallory argues that the superior court improperly determined that the continuity factor "favors continuing the present shared custody arrangement." Under AS 25.24.150(c)(5), the superior court, in determining the best interests of the child "shall consider . . . the length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity." Mallory asserts that granting her primary custody would not interrupt the children's stability because "[t]he record reflects that mother has been the primary physical parent of all three children their entire lives." However, Malcolm insists that nothing less than "'shared custody' had existed while the marriage was intact."

The superior court did not clearly err or abuse its discretion by treating both parents as though they had been equally involved in child rearing, and the record provides support for such a determination.[20] Mallory further argues that the children would not experience a change in continuity or stability if

she received primary physical custody because they would continue "in the same schools, with the same teachers, the same neighborhoods, the same group of friends." However, "[t]he continuity factor has two components: maintaining geographic continuity and maximizing relational stability."[21] Indeed, "stability is often a function of parental attitude and not of geography."[22] While their relationships with their friends and teachers might stay the same, granting Mallory primary physical custody could cause instability in Megan's and Brooke's relationship with their father, and with their brother Jason, who is in the custody of Malcolm 70% of the time. The court did not clearly err or abuse its discretion by finding that the continuity factor slightly favored the current custody arrangement.

### 4. The superior court's determination that Malcolm was less at fault with regard to fostering a relationship with the other parent

 When assessing the willingness and ability of Malcolm and Mallory to foster a relationship between the other parent and the children, the superior court found that, on balance, Malcolm was "perhaps slightly less at fault with regard to this factor."[23] Mallory argues that the court improperly assessed this factor based on the evidence.

The court noted that Mallory "has been overly supportive" of Brooke and that Mallory was not fostering a good relationship between Brooke and Malcolm by always supporting Brooke. The court also stated, "[Malcolm] seems to be more able to avoid negative comments about [Mallory]," although the court mentioned potentially disparaging comments Holly had made.

There is evidence that conflicts with the superior court's assessment. In the custody investigator's report, Jason reported that

---

**19.** *Sheffield,* 265 P.3d at 335 (quoting *Yvonne S. v. Wesley H.,* 245 P.3d 430, 433 (Alaska 2011)).

**20.** For example, the custody investigation report stated, "[Father] has taught [the girls] how to hunt and fish as well as modeling a good work ethic."

**21.** *Blanton v. Yourkowski,* 180 P.3d 948, 953 (Alaska 2008).

**22.** *McQuade v. McQuade,* 901 P.2d 421, 426 (Alaska 1995) (internal citation and alterations omitted).

**23.** *See* AS 25.24.150(c)(6), quoted in footnote 4.

neither parent talked much about the other, Brooke reported that Malcolm would "sometimes roll his eyes or make faces" if he heard Mallory mentioned in his house, and Megan reported that sometimes Malcolm said "he does not like Mother which makes Megan sad." None of the children reported Mallory saying anything derogatory about Malcolm, although Mallory's text messages to Brooke could be characterized as derogatory.

But again, it is the function of the trial court to assess credibility and weigh the evidence. The superior court did not consider improper factors or improperly weigh factors in making its determination.[24] The court concluded its assessment of this factor by expressing its belief that the parties would both calm down after the completion of the case, again suggesting that this factor was not of primary significance in the court's overall evaluation. We cannot conclude that the court clearly erred or abused its discretion based on the conflicting evidence regarding this factor and other more relevant factors.

### 5. The superior court's assessment that alcohol does not appear to be a present concern

■ Mallory argues that the superior court did not properly assess the influence of alcohol in Malcolm's life and therefore this factor should have weighed in her favor.[25] The court found that "neither party has an alcohol abuse problem or that their use of alcohol impedes their ability to be parents at this time." The court noted, "[A]lcohol has been an issue in the past, but it does not appear to be an issue at this time." The record supports the court's findings. Malcolm testified that he had one or two drinks every day, but that he was not addicted to alcohol. Tom Lytle stated that the amount of alcohol Malcolm reported he consumed, in itself, does not indicate substance abuse. Dot Littleton characterized Mallory as occasionally abusing alcohol as part of her stress coping mechanism in the past but testified that Mallory was not an alcoholic. Littleton did not consider Mallory to have alcohol

abuse issues. Mallory asserts Malcolm still has issues with alcohol based on her allegation that Megan received a bruised knee from Malcolm falling on her while drunk. As discussed above, there was no corroborating evidence to support Mallory's allegation, and the court disregarded it.

The court evaluated conflicting evidence and made its findings. It did not clearly err or abuse its discretion in finding that "neither party has an alcohol abuse problem or that their use of alcohol impedes their ability to be parents at this time," and in neutrally weighing this factor.

### 6. The superior court's reliance on the child custody investigator's report

■ Mallory argues that it was improper for the court to rely on the custody investigator's report because it was limited in scope. It may have been limited in scope, but it was based on the investigator's interviews of both parents and all three children. It also contained relevant, material information. For example, the custody investigator wrote:

> In a family where there is a divorce, children can easily learn to manipulate their parents when they don't like the punishment they are receiving. [Brooke] appears to be doing this; running to Mother when she does not like what happens at Father's. While there is nothing inappropriate about [Brooke] confiding in her mother, the problem arises when there is a perceived alignment with the child by one parent against the other parent. This can serve to undermine the other parent's authority and relationship with the child. Like all children, [Brooke] needs to learn to resolve conflict and deal with the consequences of her actions.

The court stated, "[A]s the Child Custody Investigator pointed out, ... [Brooke] (and [Malcolm D.]) believes that her mother has taken her side in her dispute with her father. This has led [Brooke] to conclude that she can manipulate the situation to her benefit

---

**24.** *See Gratrix v. Gratrix*, 652 P.2d 76, 80 (Alaska 1982).

**25.** *See* AS 25.24.150(c)(8), quoted in footnote 4.

whenever she feels that her father has been mean to her."

Alaska Civil Rule 90.6(d)(2) clearly allows the trial judge to consider the custody investigator's report. It was not an abuse of discretion for the superior court to consider the report when making its determination on the motion to modify custody.

### C. The Superior Court Did Not Err When It Determined That The Presumption In AS 25.24.150(g) Does Not Apply In This Case.

 The superior court concluded that the presumption in AS 25.24.150(g) did not apply because Malcolm and Mallory had both committed two acts of domestic violence during the marriage and neither party was more likely to perpetrate violence than the other. Mallory does not explicitly challenge this conclusion. However, "we consider pro se pleadings liberally in an effort to determine what legal claims have been raised." [26] Mallory implicitly challenged this conclusion when challenging the court's findings on the number of domestic violence acts committed by each party.

The superior court found that during the marriage Malcolm and Mallory had each committed two acts of domestic violence and "they each have a history of domestic violence as that term is defined by AS 25.24.150(h)." [27] Alaska Statute 25.24.150(i)(1) states:

If the court finds that both parents have a history of perpetrating domestic violence

under (g) of this section, the court shall ... award sole legal and physical custody to the parent who is less likely to continue to perpetrate the violence and require that the custodial parent complete a treatment program[.]

The superior court determined that "neither party [is] less likely than the other" to perpetrate domestic violence. The court correctly stated, "AS 25.24.150(i)(1) does not address the situation before the court, where neither party is less likely to perpetrate the violence than the other party." The court concluded that under such circumstances, "the presumption set forth in AS 25.24.150(g) does not apply to either party and hence that the court is free to fashion a custody decree that meets the best interests of the children notwithstanding the requirements of AS 25.24.150(h)."

 We have not previously addressed the issue of how to make a custody determination in light of findings that both parents have histories of committing domestic violence and that neither parent is more likely to perpetuate violence than the other. The Supreme Court of North Dakota has addressed this issue thoughtfully on several occasions. In one case that court held, "When the evidence shows an equal amount of domestic violence on the part of both parents, the [rebuttable] presumption [against awarding custody to the perpetrator of the domestic violence] should apply to neither party." [28] In another case, that court stated:

other parent is absent, suffers from a diagnosed mental illness that affects parenting abilities, or engages in substance abuse that affects parenting abilities, or because of other circumstances that affect the best interests of the child.

**28.** *Huesers v. Huesers,* 560 N.W.2d 219, 222 (N.D.1997); *see also* Nancy Ver Steegh, *Differentiating Types of Domestic Violence: Implications for Child Custody,* 65 LA. L. REV. 1379, 1425 (2005) ("Equally initiated violence is only likely to occur in cases involving Situational Couple Violence and, for the foregoing reasons, rebuttable presumptions against custody awards to perpetrators should not apply in those cases."). The superior court in this case expressly found the parties' mutual domestic violence was equal and "situational."

**26.** *Toliver v. Alaska State Comm'n for Human Rights,* 279 P.3d 619, 622 (Alaska 2012).

**27.** Alaska Statute 25.24.150(h) states:

A parent has a history of perpetrating domestic violence under (g) of this section if the court finds that, during one incident of domestic violence, the parent caused serious physical injury or the court finds that the parent has engaged in more than one incident of domestic violence. The presumption may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent because the

[I]f domestic violence has been committed by both parents, the trial court [must] measure the amount and extent of domestic violence inflicted by both parents. If ... the trial court finds that the amount and extent of the violence inflicted by one parent is roughly proportional to the violence inflicted by the other parent, and both parents are otherwise found to be fit parents, the presumption against awarding custody to either perpetrating parent ceases to exist. In such a case, the trial court is not bound by any presumption, but may consider the remaining customary best-interests factors in making its custody decision.[29]

We agree with the analysis and procedure outlined by the North Dakota Supreme Court. If the trial court finds that both parents have a history of perpetrating domestic violence as defined by AS 25.24.150(h), but also finds that neither parent is more likely than the other to continue to perpetrate the violence, the trial court may exercise its discretion and conclude that the rebuttable presumption set forth in AS 25.24.150(g) does not apply to either parent. Thereafter, the trial court should consider the remaining best-interests factors in making its custody decision.

 We emphasize that the trial court must take a qualitative approach when considering the nature and extent of the domestic violence committed by both parents rather than merely counting the number of domestic violence occurrences to determine whether the rebuttable presumption in AS 25.24.150(g) applies. For example, if one parent committed two heinous acts such as violent assaults upon the other parent, but the other parent committed two comparatively minor incidents, the trial court should take a holistic or qualitative approach when determining if the presumption applies rather

than concluding the presumption does not apply merely because the parents committed the same number of incidents. In this example, a trial court likely would find that the presumption applies against the perpetrator of the more egregious domestic violence. As always when exercising its fact-finding and discretionary responsibilities, the trial court will want to make sufficient findings and provide an explanation of its reasons for its decision. The incidents of violence do not have to be exactly equal in intensity for the court to conclude that neither parent is more likely to perpetrate the violence.

Here, the superior court did a proper qualitative assessment: it did not find all of Mallory's allegations credible (e.g., the second choking incident), it found Malcolm had committed acts of domestic violence, and it found Mallory also committed two comparatively minor acts of domestic violence. The court found the domestic violence was "situational." The court also found that domestic violence "is not likely to recur by either party" and that "domestic violence is not a factor that precludes the parties from sharing custody of the girls." We see no clear error in these findings, and we conclude the court did not abuse its discretion in concluding the presumption did not apply under these circumstances.

## V. CONCLUSION

We AFFIRM the judgment of the superior court in all respects.

---

**29.** *Krank v. Krank,* 529 N.W.2d 844, 850 (N.D. 1995) (internal citation omitted).