NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| MARYBETH J., | ) | |
| | ) | Supreme Court No. S-18235 |
| Appellant, | ) | |
| | ) | Superior Court No. 1PE-20-00059 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| TROY T., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1967 – May 17, 2023 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Petersburg, Trevor Stephens, Judge.

Appearances: Taylor R. Thompson, Thompson Law Group, Anchorage, for Appellant. Kara A. Nyquist, Nyquist Law Group, Anchorage, for Appellee.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

## I. INTRODUCTION

A mother who planned to move out of state filed a motion to modify custody. The superior court denied her motion and she appeals. She argues that the superior court clearly erred and abused its discretion by overemphasizing the child's geographic stability and by not applying the statutory domestic violence presumption

---

\*      Entered under Alaska Appellate Rule 214.

against the child's father. She also argues that the court should have established a different visitation schedule.

We conclude that the court did not abuse its discretion when it denied the motion to modify custody or when it considered the parents' history of domestic violence and, after finding that the presumption applied to both parents, determined that neither of them was less likely to commit future domestic violence. And the court did not err by initially declining to issue a modified visitation order.

## II. FACTS AND PROCEEDINGS

### A. Facts

MaryBeth J. and Troy T. are the parents of a five-year-old child. They, and their extended families, live in the same community. MaryBeth works as a medical assistant and plans to pursue a career in nursing. Troy works as a commercial fisherman and his schedule requires him to be away at various times in the year, particularly during the summer. MaryBeth and Troy's relationship deteriorated after the death of their second child; they separated in April 2020. MaryBeth and Troy eventually agreed upon a parenting plan in the fall of 2020.

Around the time she and Troy separated, MaryBeth obtained a domestic violence protective order (DVPO) against him. The order granted her use of one of the couple's vehicles. In August 2020 MaryBeth found a GPS tracker in a waterproof case underneath the back bumper of the car. Troy was charged with violating the DVPO by placing the GPS tracker on the car; he pled guilty to the charge in March 2021.

### B. Proceedings

In June 2021 MaryBeth moved to modify the custody order, seeking primary custody because she planned to move to Montana, where she hoped to begin a nursing program in the fall. She proposed a visitation schedule that would provide four two-week visits for Troy. Troy opposed the motion, arguing that their child should remain in Alaska and that he should therefore be awarded primary custody.

The court held a two-day evidentiary hearing in September. At the close of the hearing the court made extensive oral findings and denied MaryBeth's motion to modify custody. The court later issued a written order memorializing its findings.

The court determined there had been substantial changes in circumstances since the custody order had issued. The court first found that MaryBeth's plan to move to Montana constituted a substantial change in circumstances.[1] The court also found that both parents had committed domestic violence. Turning first to Troy's conviction for violating the DVPO, it found that although the act had occurred before the parents agreed to a parenting plan and would not normally satisfy the change in circumstances requirement to modify custody, it had not been "adequately addressed in the case."[2]

The court also considered the evidence each parent presented and found that both parents had histories of domestic violence. The court found that MaryBeth had committed domestic violence when she hit an ex-boyfriend and hit Troy during an argument. It found that Troy committed domestic violence by placing the tracker on MaryBeth's car and when he had hit their child during an argument. It then considered whether to apply the statutory presumption against awarding custody to a parent who had engaged in domestic violence.[3] The court concluded the presumption against awarding custody applied to both MaryBeth and Troy and that neither had rebutted the

---

[1]    *Bagby v. Bagby*, 250 P.3d 1127, 1128-29 (Alaska 2011) (affirming that custodial parent's move out of state amounts to substantial change in circumstances "as a matter of law") (quoting *Barrett v. Alguire*, 35 P.3d 1, 6 (Alaska 2001)).

[2]    *McAlpine v. Pacarro*, 262 P.3d 622, 626-27 (Alaska 2011) (holding that court was permitted to consider evidence of previous domestic violence in custody modification where issue was "not adequately addressed at the initial custody determination or subsequent proceedings").

[3]    AS 25.24.150(g) (creating rebuttable presumption against awarding custody to "a parent who has a history of perpetrating domestic violence against the other parent, a child, or a domestic living partner").

presumption. The court then turned to AS 25.24.150(i) to determine which of them was less likely continue to commit domestic violence.[4] The court found that neither MaryBeth or Troy was likely to continue to perpetrate domestic violence. As a result, the court conducted a symmetrical analysis to determine whether awarding primary custody to MaryBeth to go to Montana or to Troy to remain in Alaska would be in their child's best interests.[5]

The court first found that MaryBeth's reasons for moving to Montana were legitimate.[6] But it concluded that awarding her primary custody would not be in the child's best interests. The court addressed each of the statutory best interest factors.[7] The court highlighted AS 25.24.150(c)(5),[8] "the continuity factor," as the most important factor in its decision. It found that too much uncertainty surrounded MaryBeth's plans for life in Montana, and that although the child "could do very well" in Montana, "those are unknowns and that's speculation." The court concluded "that the knowns hold the trump card" and favored keeping the child in Alaska. The court

---

[4] AS 25.24.150(i)(1) (requiring custody be awarded "to the parent who is less likely to continue to perpetrate the violence" when court has found both parents have history of perpetrating domestic violence).

[5] *Moeller-Prokosch v. Prokosch*, 99 P.3d 531, 535-36 (Alaska 2004) (holding court must engage in best interests analysis that includes "symmetric consideration" of consequences to child both if parent leaves with child and if parent leaves without child).

[6] *See Mengisteab v. Oates*, 425 P.3d 80, 85-86 (Alaska 2018) (defining "legitimate" move as one not primarily motivated by desire to frustrate other parent's visitation).

[7] AS 25.24.150(c) requires the court to consider eight specific factors as well as "other factors that the court considers pertinent." AS 25.24.150(c)(9).

[8] AS 25.24.150(c)(5) (requiring court to consider "length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity").

therefore denied MaryBeth's motion to modify and ordered that Troy would assume primary custody if MaryBeth moved to Montana.

The court declined to address visitation because MaryBeth had insisted that she would not move unless the court granted her primary custody. The court's written order acknowledged that "some modifications to the current custody are warranted given the ambiguities identified during the evidentiary hearing."

MaryBeth filed a timely motion to reconsider. She argued that the court had erred by finding that neither parent was more likely than the other to commit acts of domestic violence in the future, by failing to address visitation, and in its best interests analysis. The court denied reconsideration, stating it was not persuaded that it had overlooked or misconceived any material fact or law relating to its domestic violence and best interests findings. The court noted, however, that it agreed that given MaryBeth's new position that she might move to Montana without the child, "her visitation must be addressed." It invited both parents to submit a proposed visitation schedule.

Neither party submitted anything in response.[9] The court issued a visitation order in late October granting MaryBeth visitation on spring breaks after their child began first grade, Christmas and Thanksgiving breaks in alternating years, and three weeks in the summer. The order also provided that her summer visitation would increase as the child grew up.

MaryBeth appeals. On the same day, she filed a motion to reconsider the court's visitation order. The superior court issued a notice that because the case was on appeal, it no longer had jurisdiction to address the motion to reconsider its visitation

---

[9] In its later order denying reconsideration, the court noted that due to a problem with distribution from the Petersburg clerk's office, neither party received its initial order requesting proposed visitation schedules.

order "unless and until jurisdiction is returned to the court by the Alaska Supreme Court."

## III. STANDARD OF REVIEW

A superior court has "broad discretion in determining child custody matters."[10] A superior court abuses its discretion in the custody context if it "fail[s] to consider statutorily-mandated factors, or improperly weighed certain factors in making its determination."[11] "[A] trial court is required to make findings on the various statutory factors which are sufficient to make the basis of its decision susceptible to review."[12] "Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[13]

"Whether the trial court applied the correct legal standard in its custody determination is a question of law that we review de novo, 'adopting the rule of law that is most persuasive in light of precedent, reason and policy.' "[14]

## IV. DISCUSSION

### A. The Superior Court Did Not Err In Its Analysis Of The Best Interests Factors.

To modify child custody or visitation a superior court must first determine that there has been a substantial change in circumstances and then determine whether the child's best interests require modification of the existing order.[15] Alaska Statute

---

[10] *Williams v. Barbee*, 243 P.3d 995, 1000 (Alaska 2010).

[11] *Duffus v. Duffus*, 932 P.2d 777, 779 (Alaska 1997) (quoting *Bird v. Starkey*, 914 P.2d 1246, 1248 (Alaska 1996)).

[12] *Id.*

[13] *Bruce H. v. Jennifer L.*, 407 P.3d 432, 436 (Alaska 2017).

[14] *Mallory D. v. Malcolm D.*, 290 P.3d 1194, 1201 (Alaska 2012) (quoting *Nelson v. Nelson*, 263 P.3d 49, 52 (Alaska 2011)).

[15] AS 25.20.110(a); *Bagby v. Bagby*, 250 P.3d 1127, 1128-29 (Alaska 2011).

25.24.150(c) specifies the factors the court must consider when making the latter determination.

Although the court must consider each of the best interests factors in AS 25.24.150(c), it is only required to "discuss the factors that it deems relevant to the case before it" and "is not required to weigh the factors equally."[16] "[E]xpress mention of each factor is not required" as long as the court's findings provide "a clear indication of the factors . . . considered important in exercising its discretion or allow us to glean from the record what considerations were involved."[17]

When one parent plans to move out of Alaska, and the court determines that the parent's reason for moving is legitimate, we require the court to conduct a "symmetric analysis" of the child's best interests.[18] That analysis requires the court to consider how the child's best interests would be affected if the child moved outside Alaska with the parent who is leaving and how the child's best interests would be affected by remaining in Alaska with the other parent.[19]

The superior court more than satisfied these requirements. It addressed each best interests factor and its relevance to the custody decision and stated that it would "consider them each in turn." The court concluded there was no evidence of

---

[16] *Williams v. Barbee*, 243 P.3d 995, 1005 (Alaska 2010).

[17] *Park v. Park*, 986 P.2d 205, 207 (Alaska 1999).

[18] *Mengisteab v. Oates*, 425 P.3d 80, 85-86 (Alaska 2018) (explaining two-step approach for determining child's best interests in custody dispute where one parent plans to relocate out of state with child).

[19] *Moeller-Prokosch v. Prokosch*, 99 P.3d 531, 535-36 (Alaska 2004).

abuse or neglect[20] or substance abuse,[21] and that the child was too young to have a meaningful preference.[22] The court then found that two of the factors did not favor either parent:  the child did not have unique needs[23] and both parents demonstrated a capacity to meet their child's needs.[24]

After addressing the other factors, the court finally stated that the most important factor in its custody determination was (c)(5), which requires the court to consider the stability of the child's living situation and "maintaining continuity."  It specifically considered the child's age and the parties' relationships in the community, observing that it would be more feasible for MaryBeth to visit Alaska than for Troy to visit Montana.  It concluded that while geographic stability was "not as major a consideration as it sometimes is" because the child was too young to have established routines, his ties to the community favored staying in Alaska.  The court found that other considerations favoring a move to Montana were too speculative:  "Here we have the known, . . . . [The child] might have all kinds of opportunities [in Montana] but those are unknowns."

MaryBeth argues that the court's analysis of this factor automatically disadvantaged her as the relocating parent and that the court gave geographic stability

---

**20**    *See* AS 25.24.150(c)(7) (requiring court to consider evidence of child abuse or neglect in proposed custodial household or between parents).

**21**    *See* AS 25.24.150(c)(8) (requiring court to consider evidence of substance abuse that directly affects children's emotional or physical well-being).

**22**    *See* AS 25.24.150(c)(3) (requiring court to consider children's custody preferences if they are of sufficient age and capacity to form them).

**23**    *See* AS 25.24.150(c)(1) (requiring court to consider children's particular "physical, emotional, mental, religious, and social needs" in custody award).

**24**    *See* AS 25.24.150(c)(2) (requiring court to consider evidence of parents' ability to meet children's needs).

undue weight. MaryBeth also claims that the court's failure to consider her role as the child's primary caregiver was an abuse of discretion because it was central to the child's "emotional continuity." But our previous cases have made clear that there is no "automatic" disadvantage to the parent who leaves Alaska. We have held that focusing on the stability and continuity factor is appropriate when one parent plans to move out of state.[25] We have also held that proper analysis requires the court to consider both geographic and emotional stability.[26] This is because a "continuity test centered entirely on the child's geographical stability would always favor placing the child with the non-moving parent."[27] We have recognized that the relocating parent should be awarded primary custody if that offers the child greater emotional stability: "the continuity and stability factor does not preordain the result in such cases; instead, it commands a comprehensive inquiry into 'each parent's respective ability to maintain stable and satisfactory relations between themselves and the child.' "[28] And we have stressed that there may be important additional facts to consider, such as whether a parent's living arrangements are settled or whether the new community will support the child.[29] Those circumstances were all "unknowns" here.

The superior court's findings demonstrate that it appropriately conducted a symmetrical analysis of whether the child's interests would be better served by moving or remaining in Alaska. The court took the child's loving relationship with

---

[25]     *See, e.g.*, *Blanton v. Yourkowski*, 180 P.3d 948, 955 (Alaska 2008); *Meier v. Cloud*, 34 P.3d 1274, 1279 (Alaska 2001).

[26]     *Blanton*, 180 P.3d at 954; *Meier*, 34 P.3d at 1279.

[27]     *Meier*, 34 P.3d at 1279.

[28]     *Id.*

[29]     *See id.*

both parents and attachment to the community into account. It did not, as MaryBeth alleges, consider only the child's geographic stability.

MaryBeth also argues that the court improperly weighed the factors it relied upon. The superior court's findings reflect a careful review of each party's evidence and arguments. Its analysis of the factors and presumptions was proper and within its discretion.[30] The trial court has considerable discretion to make custody determinations according to the factors it deems most relevant in the situation before it and need not give equal weight to each factor. The superior court did not err or abuse its discretion when it denied MaryBeth's motion to modify custody.

**B.      The Superior Court Did Not Clearly Err By Determining That Neither Parent Was More Likely To Engage In Domestic Violence In The Future.**

The superior court found that both parents had engaged in domestic violence. Its findings show that it considered MaryBeth's arguments that Troy had perpetrated acts of domestic violence. The court explained its finding that the domestic violence was unlikely to repeat, taking into account facts that provided some explanation for the tensions that developed between MaryBeth and Troy, including the death of their child.

In *Mallory D. v. Malcolm D.*, we directed the superior court to take "a holistic or qualitative approach" when deciding whether to apply the statutory presumption against a parent with a history of domestic violence.[31] Incidents of

---

[30]      *Mallory D. v. Malcolm D.*, 290 P.3d 1194, 1207 (Alaska 2012) (holding that where court finds both parents have history of perpetrating domestic violence, it may exercise discretion and decide not to apply statutory presumption to either parent).

[31]      *Id.* at 1207 (holding that "the trial court must take a qualitative approach when considering the nature and extent of the domestic violence committed by both parents rather than merely counting the number of domestic violence occurrences to determine whether the rebuttable presumption in AS 25.24.150(g) applies").

domestic violence "do not have to be exactly equal in intensity for the court to conclude that neither parent is more likely to perpetrate the violence,"[32] as the superior court acknowledged. And the court explained that it had an obligation to decide if either party had rebutted the presumption even though neither party had expressly argued that point.[33]

The superior court described Troy's placing a GPS tracker on MaryBeth's car as "bizarre" and "inexcusable." But despite its characterization of the incident for which Troy was criminally charged and convicted, the court determined not to apply the presumption against custody against him in light of its conclusion that neither parent was likely to continue to commit domestic violence. The court was in a better position to weigh evidence and assess credibility than we are. We do not reweigh evidence and we give great deference to trial courts' fact finding and credibility determinations, particularly when based on testimony of witnesses.[34] Although the court's description of Troy's criminal act is fitting, we cannot say that the court abused its discretion when it decided not to apply the presumption against him.[35]

The superior court complied with the "mandatory process" to determine whether either parent was likely to commit further domestic violence. It did not abuse its discretion when it decided not to apply the presumption against Troy. Its finding

---

[32]     *Id.*

[33]     *See Weinberger v. Weinmeister*, 268 P.3d 305, 309 (Alaska 2012) (holding that "the path charted in AS 25.24.150(g)-(h)," which explains steps for establishing rebuttable presumption against awarding custody to perpetrator of domestic violence, "is not optional").

[34]     *See Kilmer v. Dillingham City Sch. Dist.*, 932 P.2d 757, 764 (Alaska 1997).

[35]     *See Blanton v. Yourkowski*, 180 P.3d 948, 955, n.31 (Alaska 2008) (noting "we cannot substitute our judgment for that of the superior court" simply where another custody award may have been reasonable).

that neither parent was likely to commit future domestic violence was not clearly erroneous.**36**

### C. The Superior Court Did Not Err When It Established A Visitation Schedule.**37**

We have held that "visitation is a 'natural right of the noncustodial parent that may not be taken away absent extraordinary circumstances.' "**38** Courts issuing visitation orders must make factual findings supporting their decision "unless the reasons can be gleaned from the record" so that a reviewing court may clearly understand the grounds for reaching its decision.**39**

Because MaryBeth was firm that she would not move without primary physical custody, the court initially determined it "[did not] need to address visitation" at the evidentiary hearing. Details about MaryBeth's expected circumstances in Montana were not presented to the court because she maintained she would not move if her motion were denied. The superior court could not have made the relevant factual findings or issued a proper visitation order based on what it knew at the hearing.

---

**36** *See Kilmer*, 932 P.2d at 764 ("When the trial judge's decision is dependent largely upon oral testimony of the witnesses seen and heard by the court, this court must give due regard to the trial judge's opportunity to judge the credibility of those witnesses.").

**37** Though the superior court at first declined to consider visitation further while MaryBeth's appeal was pending, the parties have continued to file motions to modify custody and visitation. The superior court was mistaken when it concluded that it lost jurisdiction over visitation once MaryBeth filed her appeal. Because MaryBeth appealed only the custody order (and denial of reconsideration of that order), the court did not lose jurisdiction to consider MaryBeth's motion to reconsider the visitation order. *See Smallwood v. Cent. Peninsula Gen. Hosp., Inc.*, 227 P.3d 457, 459-60 (Alaska 2010) (explaining that superior court may not "modify 'any matters directly or necessarily involved in the matter under review,' " but does retain jurisdiction over "collateral matters").

**38** *Bruce H. v. Jennifer L.*, 407 P.3d 432, 441 (Alaska 2017).

**39** *I.J.D. v. D.R.D.*, 961 P.2d 425, 432 (Alaska 1998).

MaryBeth moved for reconsideration contending that the court should nonetheless have established a visitation schedule. Though the court disagreed that it had erred and denied reconsideration because it still "[did] not have the benefit of a specific detailed visitation schedule request from either party," it did invite the parties to submit proposed visitation schedules. Neither parent filed anything in response, so the court eventually issued a new visitation schedule reflecting the move to Montana. That schedule awarded MaryBeth visitation during school breaks, alternating holidays, and summer vacations. The court ordered that the summer visits would increase as the child grew up. MaryBeth argues that the court erred by failing to take Troy's summer employment into consideration when it fashioned the schedule.

The parents' failure to respond to the court's invitation to offer proposed schedules forced the court to rely on the information presented during the evidentiary hearing. The court did not abuse its discretion when it fashioned a visitation order based on that evidence.[40] The superior court did not err.

## V.    CONCLUSION

We AFFIRM the superior court's custody award.

---

[40]    MaryBeth and Troy continue to litigate the terms of their custody agreement in superior court, so this issue may be moot. *See supra* n.37.